AMERICAN NATIONAL BANK AND TRUST COMPANY, Guardian of the Estate of Kennicki Freeman, a Disabled Minor, *et al.*, Plaintiffs-Appellants, v. JAMES BRANSFIELD, Defendant-Appellee (Columbus-Cuneo-Cabrini Medical Center *et al.*, Defendants; Columbus-Cuneo-Cabrini Medical Center, Defendant and Counterplaintiff-Appellant; Mohammed Hafeez *et al.*, Defendants and Counterdefendants-Appellees).

First District (4th Division)   No. 1—88—2833

Opinion filed June 28, 1991.—Rehearing denied August 14, 1991.

James P. Chapman and Kathleen Hogan Morrison, both of James P. Chapman & Associates, of Chicago, for appellants American National Bank & Trust Company and Sherron Freeman.

John J. Reidy, Douglass C. Rose, and Charles E. Reiter III, all of Ruff, Weidenaar & Reidy, Ltd., of Chicago, for appellant Columbus-Cuneo-Cabrini Medical Center.

Wildman, Harrold, Allen & Dixon, of Chicago (Frank R. Petrek, Jr., Ruth E. VanDemark, and Susan J. Flieder, of counsel), for appellee James Bransfield.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Gary A. Grasso, Joshua G. Vincent, and Bruce L. Carmen, of counsel), for other appellees.

JUSTICE JOHNSON delivered the opinion of the court.

Columbus-Cuneo-Cabrini Medical Center (the Medical Center), defendant and counterplaintiff, appeals from an order of the circuit court of Cook County dismissing a claim for implied indemnity in favor of Dr. Mohammed Hafeez, Julia Lester, and Anesthesia Associates of Lake Shore, Ltd. (cumulatively referred to as the Anesthesia defendants), defendants and counterdefendants.

The questions presented on appeal are (1) whether the trial court properly dismissed the Medical Center's counterclaim for implied indemnity against the Anesthesia defendants; and (2) whether the settlement agreement between plaintiffs and the Anesthesia defendants was made in good faith.

We affirm.

Kennicki Freeman is a 2½-year-old boy who suffered profound brain damage during a routine hernia surgery at the Medical Center. Plaintiffs American National Bank and Trust Company (as guardian for the estate of Kennicki Freeman, a disabled minor) and Sherron Freeman (Freeman's mother) brought a medical malpractice action against the Medical Center, Dr. James Bransfield, the physician who performed the surgery, and the Anesthesia defendants (Dr. Mohammed Hafeez, the anesthesiologist who administered the anesthesia; Julia Lester, the nurse anesthetist who assisted Dr. Hafeez; and Anesthesia Associates of Lake Shore, Ltd., the exclusive provider of anesthesia services at the Medical Center).

The Medical Center filed a counterclaim against the Anesthesia defendants seeking recovery for principal/agent indemnity and contribution. Subsequently, the Anesthesia defendants entered into a settlement agreement with plaintiffs. In a consolidated action, the trial court dismissed the Medical Center's claim for contribution and indemnity against the Anesthesia defendants and entered summary judgment in favor of Dr. Bransfield. Plaintiffs' appeal of the summary judgment decision in favor of Dr. Bransfield was dismissed with preju-

dice. The Medical Center appeals the dismissal of its claim against the Anesthesia defendants for indemnification.

On January 21, 1984, Freeman was admitted to the Medical Center for general surgery to correct an inguinal hernia. During the course of the operation, Freeman suffered irreversible brain damage as a result of oxygen deprivation. The pleadings advanced several theories to explain how the injury occurred. One theory is that the anesthesia tube, through which oxygen and anesthesia are administered to the patient, was misplaced and caused an interruption in the supply of oxygen to the brain. The lack of oxygen to the boy's brain caused his heart to stop and efforts to resuscitate his heart were unsuccessful. Another theory is that bradycardia (slackening in the pace of the heart beat) was brought on by a neurological reflex to the surgery. Under this theory, it was a delay in resuscitative measures which caused the hypoxia and resulting brain damage. A third theory focuses on the defective delivery of oxygen from the anesthesia machine.

Plaintiffs originally filed a negligence action against only the Medical Center in its capacity as employer of the Anesthesia defendants. Plaintiffs filed a first amended complaint, adding Dr. Hafeez, Dr. Bransfield, and Anesthesia Associates of Lake Shore, Ltd., as defendants. The Medical Center filed a motion for summary judgment, arguing that an independent contractor relationship existed between the hospital and the Anesthesia defendants; therefore, the Medical Center could not be liable under the doctrine of *respondeat superior*. The trial court denied the motion.

Five expert witnesses were identified and deposed in the case. Plaintiffs and Dr. Bransfield each presented two witnesses who testified that Dr. Hafeez was negligent in his administration of the anesthesia. Dr. Hafeez presented one expert witness who raised doubts as to Dr. Bransfield's care and treatment during the operation. There was no expert testimony regarding the Medical Center's standard of care. In their amended complaint, plaintiffs charged, *inter alia*, that the Medical Center was negligent in meeting its obligation to ensure quality health care and in hiring unqualified personnel.

On March 11, 1987, the Medical Center filed a counterclaim against the Anesthesia defendants for contribution under "An Act in relation to contribution among joint tortfeasors" (Contribution Act) (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*) and for indemnity. The counterclaim asserted that in the event it was found vicariously liable for the act of the Anesthesia defendants, it would be entitled to indemnification or 100% contribution. The Anesthesia defendants re-

quested a dismissal of both counts of the counterclaim, arguing that the indemnity theory of the Medical Center's counterclaim was invalid, pursuant to section 2(d) of the Contribution Act. The court dismissed the implied indemnity claim and the contribution claim based upon its determination that implied indemnity "should not apply." The court further stated that the settlement between plaintiffs and the Anesthesia defendants fell within the sense and purview of the contribution statute and, therefore, the indemnification claim should be denied.

On August 10, 1988, the Anesthesia defendants reached a settlement with plaintiffs for $4.3 million. The available insurance coverage for the Anesthesia defendants was $5 million. After an extensive oral argument on the good faith of the settlement was held, the trial court found the settlement to be in good faith and dismissed the Medical Center's counterclaim with prejudice. The court certified the order for immediate appeal pursuant to Supreme Court Rule 304 (134 Ill. 2d R. 304), and the Medical Center filed a notice of appeal on September 22, 1988.

The Medical Center contends that the trial court erred in dismissing its implied indemnity action based upon vicarious liability against the Anesthesia defendants. It further asserts that implied indemnity is a viable action where liability is imposed by policy of law rather than culpability of conduct. (*Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, 35.) The Medical Center argues that since there was no testimony criticizing any of its acts, its potential liability is not based on fault but upon the policy choice that it should be vicariously liable for the actions of another. The Anesthesia defendants maintain that the trial court properly dismissed the Medical Center's counterclaim because the Contribution Act supersedes common law implied indemnity based upon the vicarious liability of a principal for the acts or omissions of his agent. We agree with the Anesthesia defendants.

■ Both indemnity and contribution arise out of the same principle of restitution or unjust enrichment. "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." (Restatement of Restitution §1 (1937).) Unlike contribution, which requires that joint tortfeasors share responsibility for injury to a plaintiff, indemnity shifts the *entire* burden of judgment to one party. The theory underlying implied indemnity is that liability is placed upon the party whose fault was the primary cause of the injury. (*Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 291.) However, "[b]ecause of either confusion or deliberate departure from prevailing usage, however, there are decisions in

which full reimbursement has been allowed under the name of contribution, or some form of distribution has been allowed under the name of indemnity." W. Keeton, Prosser & Keeton on Torts §51, at 341 (5th ed. 1984).

At common law, implied indemnity involved a restitutionary device, "a contract implied in law arising from the legal obligation of an indemnitee to satisfy liability caused by actions of his indemnitor." (*Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, 255; see F. Woodward, Quasi Contracts §259 (1913).) In response to the prevailing no-contribution rule, courts began to expand the judicially created doctrine of implied indemnity. (See *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77; *Heinrich*, 139 Ill. App. 3d at 291.) Initially, implied indemnity required a pretort relationship and a qualitative distinction in the culpable conduct of the defendants; however, "the doctrine increasingly focused on qualitative distinctions, also termed primary-secondary liability or active-passive negligence." *Heinrich*, 139 Ill. App. 3d at 292.

In *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, the Illinois Supreme Court stated that it saw no valid reason for a rule prohibiting contribution among tortfeasors and declared contribution to be the law in Illinois. The court recognized statements by Dean Prosser in which he stated " '[t]here is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or his collusion with the other wrongdoer, while the latter goes scot free.' " *Skinner*, 70 Ill. 2d at 13, quoting Prosser, Torts §50, at 307 (4th ed. 1971).

■ Section 2 of the Contribution Act (Ill. Rev. Stat. 1979, ch. 70, par. 302) codifies and expands principles first stated in *Skinner*. Section 2(a) of the Contribution Act provides that where two or more persons are subject to liability in tort arising out of the same injury to person, there is a right of contribution among them. (Ill. Rev. Stat. 1979, ch. 70, par. 302(a).) Section 2(b) of the Contribution Act provides that contribution exists only in favor of a tortfeasor who has paid more than his *pro rata* share of common liability. The tortfeasor's total recovery is limited by the amount he pays in excess of his share. Ill. Rev. Stat. 1979, ch. 70, par. 302(b).

In *Allison v. Shell Oil Co.* (1986), 113 Ill. 2d 26, our supreme court stated that the effect of the Contribution Act was to extinguish

causes of actions based upon the active-passive negligence concept of implied indemnity. The court stated:

> "Active-passive indemnity, like contributory negligence, perpetuates inequality by its inability to apportion loss and its refusal to grant any relief whatsoever to a party whose conduct is considered 'active' regardless of how much or little other tortfeasors are at fault. *** Having adopted comparative negligence and the principles of apportioning rather than affixing liability, *** the need for implied indemnity *** has also evaporated." (*Allison*, 113 Ill. 2d at 34.)

The *Allison* court, quoting *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 27, stated that "total justice can only be attained where the law 'apportions damages according to the relative fault of the parties.' " *Allison*, 113 Ill. 2d at 34.

We believe that the effect of the Contribution Act was to supersede implied indemnity actions based upon vicarious liability of a principal for the acts and omissions of his agent. We find no reason why principal-agent relationships should be treated differently under the Contribution Act, which by its terms applies to "persons *** subject to liability in tort arising out of the same injury." (Ill. Rev. Stat. 1979, ch. 70, par. 302(a); see *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 299.) The recognition of implied indemnity in this case subverts the goal of the Contribution Act in eliminating inequity between joint tortfeasors.

Our decision is supported by the legislative history of the Contribution Act, which suggests that monetary damages should be shared by all responsible parties. (81st Ill. Gen. Assem. Senate Proceedings, May 14, 1979, at 175-76.) Representative Daniels stated that the bill allows for "contribution between responsible parties as to varying degrees of the judgment action or how much they may owe." (81st Ill. Gen. Assem., House Proceedings, June 14, 1979, at 18 (statement by Representative Daniels) (Senate Bill 308); *Henry v. St. John's Hospital* (1989), 180 Ill. App. 3d 558, 566.) If at the close of all the evidence, it is determined that the Medical Center's conduct played a role in proximately causing Freeman's injury, there is no reason why that negligent conduct should not be compared with the conduct of the Anesthesia defendants and the responsibility of damages shared.

Furthermore, the existence of implied indemnity and its application to principle-agent relationships resurrects legitimate criticisms in our inability to define a pretort relationship. (See Bua, *Third Party Practice in Illinois: Express and Implied Indemnity*, 25 De Paul L.

Rev. 287, 296-300 (1976).) The court in *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, stated:

"If implied indemnity and contribution coexist, we must again engage in the academic exercise of searching for pretort relationships and qualitative distinctions, but now we must also search for the fine line between cases amenable to contribution and those indicating implied indemnity. As a practical matter, too, it would be difficult to instruct juries simultaneously in theories of contribution and implied indemnity." *Heinrich,* 139 Ill. App. 3d at 297.

See also *Allison v. Shell Oil Co.* (1985), 133 Ill. App. 3d 607, 611-12.

Moreover, if the Medical Center had a sufficient pretort relationship to support a traditional implied indemnity action, it could have provided for contractual indemnity to cover vicarious liability. (*Heinrich,* 139 Ill. App. 3d at 299.) The Contribution Act does not extinguish the right of parties involved in pretort relationships to arrange for contractual indemnity.

In addition, we agree with the Anesthesia defendants that the existence of both contribution and implied indemnity as remedies among joint tortfeasors would destroy the Contribution Act's purpose of encouraging settlements. (*Hanlon v. Airco Industrial Gases* (1986), 148 Ill. App. 3d 1039, 1047; *Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 298.) The Contribution Act provides that any potentially liable persons who settle with a claimant in good faith are discharged from all liability to any other tortfeasors. (Ill. Rev. Stat. 1979, ch. 70, pars. 302(c), (d).) However, faced with the possibility of settling with the plaintiff only to be brought back into the action by a nonsettling defendant, few defendants will be encouraged to settle before trial. *Frazer v. A.F. Munsterman, Inc.* (1986), 145 Ill. App. 3d 1092, 1096; see *Hanlon,* 148 Ill. App. 3d at 1047.

The Medical Center contends that it is manifestly unfair for the law to impose a policy choice of vicarious liability and then deprive the party who is "liable" but not at fault from having the opportunity to recover completely against the actual tortfeasor. It further argues that the effect of the Contribution Act is to remove its ability to recover from the agents who settle with the plaintiff. We disagree.

We believe that section 2 of the Contribution Act provides a vicariously liable tortfeasor with a remedy which is similar to implied indemnity. The Act provides in part that "[n]o tortfeasor is liable to make contribution beyond his own pro rata share of the common liability." (Ill. Rev. Stat. 1979, ch. 70, par. 302(b).) In addition, section 3 provides in part that "[t]he pro rata share of each tortfeasor shall be

determined in accordance with his relative culpability." (Ill. Rev. Stat. 1979, ch. 70, par. 303.) The equitable concept of relative responsibility applies regardless of the basis for a particular party's liability. See *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 14.

"The clear meaning of the statutory language is that each party's share of damages should be determined by the jury, or by the judge if there is no jury, based on the facts of the case. Whether the jury finds a party 1% responsible, 100% responsible, or any figure in between, that party should be bound by the jury's verdict." (*Heinrich v. Peabody International Corp.* (1985), 139 Ill. App. 3d 289, 296.) Under the Contribution Act, there is no need to recover from settling tortfeasors because damages are apportioned based on degree of fault.

Consistent with the holding in *Heinrich*, we are of the opinion that if a jury finds that the Medical Center's liability is entirely vicarious, it may find the Medical Center 0% at fault and the Anesthesia defendants 100% at fault. (*Heinrich*, 139 Ill. App. 3d at 299.) Having settled the claim with the Anesthesia defendants, the plaintiffs may not later seek to enforce the judgment against the Anesthesia defendants.

The Medical Center incorrectly asserts that under the holding in *Hackett v. Equipment Specialists, Inc.* (1990), 201 Ill. App. 3d 186, it is impossible to apportion 100% liability to one party under the theory of contribution. The court in *Hackett* held that where a jury finds a tortfeasor 55% at fault, the jury's apportionment of 100% liability to another tortfeasor was improper. (*Hackett*, 201 Ill. App. 3d at 200-01.) We believe the proper rule is that one tortfeasor may seek 100% contribution from another party who was actually and solely at fault. *Hanlon v. Airco Industrial Gases* (1986), 148 Ill. App. 3d 1039, 1047.

In *Frazer v. A.F. Munsterman, Inc.* (1988), 123 Ill. 2d 245, defendant Munsterman filed a third-party action seeking contribution and implied indemnity. The codefendants settled with the plaintiff, while Munsterman was found liable for negligence. The trial court reduced plaintiff's award by the amount of the prior settlement and dismissed the owner's indemnity claim. (*Frazer*, 123 Ill. 2d at 254.) The supreme court affirmed dismissal of the implied indemnity claim because the owner was found negligent. (*Frazer*, 123 Ill. 2d at 270.) The court recognized that section 2(d) of the Contribution Act discharges a tortfeasor who has settled in "good faith" with the plaintiff from all liability for contribution to other tortfeasors. (*Frazer*, 123 Ill. 2d at 263.) Thus, the codefendants were not subject to the owner's contribution claim because they settled with the plaintiff. Although the court refused to consider questions involving vicarious or derivative li-

ability of the one claiming indemnity, the court rejected the appellate court's broad holding that the Contribution Act eliminated implied indemnity. *Frazer*, 123 Ill. 2d at 261.

Similarly, in *Thatcher v. Commonwealth Edison Co.* (1988), 123 Ill. 2d 275, the supreme court precluded a defendant from seeking indemnity from other tortfeasors. The court stated that although defendant had not been found negligent, it had been sued solely under theories requiring a finding of fault and, had it been found liable, would have been barred from indemnity under the holding in *Frazer*. *Thatcher*, 123 Ill. 2d at 279.

The Medical Center contends that since the expert witnesses did not criticize any of its actions it is not at fault and it is entitled to implied indemnification based on vicarious liability as a matter of law. Under the holdings in *Frazer* and *Thatcher*, we disagree. Just as in *Thatcher*, the Medical Center is being sued under a theory requiring a finding of fault.

■ On February 13, 1987, the trial judge denied the Medical Center's motion for summary judgment. It is well settled that summary judgment is appropriate in a medical malpractice case where there is no genuine issue as to any material fact and the party seeking summary judgment is entitled to judgment as a matter of law. (*Reynolds v. Mennonite Hospital* (1988), 168 Ill. App. 3d 575, 578.) Based on the trial court's ruling, the Medical Center's degree of fault, if any, is a material issue of fact for a jury to determine.

■ We therefore hold that the trial court did not err in dismissing the implied indemnity action based upon the vicarious actions of the Anesthesia defendants. We further hold that the Contribution Act supersedes common law implied indemnity based upon the vicarious liability of a principal for the acts or omissions of his agents.

■ The Medical Center's next issue on appeal is whether the trial court erred in finding that the settlement agreement between plaintiffs and the Anesthesia defendants was made in good faith. The Medical Center's only contention is that since its liability is derivative of the Anesthesia defendants' actions, the settlement was not made in good faith.

We find this argument without merit. As we have previously determined, both the Medical Center and the Anesthesia defendants are subject to liability in tort under section 2(a) of the Contribution Act. Therefore, both parties have a right to settle with the plaintiffs and obtain a discharge from further liability under section 2(d) of the Contribution Act. As long as the potential for tort liability exists, a settle-

ment can be reached in good faith. *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 122.

In the instant case, the trial court was familiar with the facts and based its determination of good faith on the arguments and authorities in a hearing on the Anesthesia defendants' motion to dismiss the counterclaim. There is no evidence that the court erred in its finding of good faith.

We therefore hold that the trial court did not err in finding that the settlement agreement between plaintiffs and the Anesthesia defendants was made in good faith.

Because we have decided this case on its merits, we need not determine whether the Medical Center's action is barred by the statute of limitations.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.