609 N.E.2d 285 (1992)
154 Ill.2d 347
181 Ill.Dec. 917
AMERICAN NATIONAL BANK AND TRUST COMPANY, Guardian of the Estate of Kennicki Freeman, et al.
v.
COLUMBUS-CUNEO-CABRINI MEDICAL CENTER et al. (Columbus-Cuneo-Cabrini Medical Center, Appellant; Dr. Mohammed Hafeez et al., Appellees).
No. 72521.
Supreme Court of Illinois.
December 4, 1992.
As Modified on Denial of Rehearing February 1, 1993.
Rehearing Denied March 29, 1993.
*286 Charles E. Reiter, III, Douglas C. Rose, Stephen L. Ruff, Jr., John J. Reidy and Todd M. Porter, Ruff, Weidenaar & Reidy, Ltd., Chicago, for appellant.
Hinshaw & Culbertson, Chicago (Joshua G. Vincent and Bruce L. Carmen, of counsel), for appellees.
Justice FREEMAN delivered the opinion of the court:
We answer today a question which remained unresolved after Allison v. Shell Oil Co. (1986), 113 Ill.2d 26, 27, 99 Ill.Dec. 115, 495 N.E.2d 496, and Frazer v. A.F. Munsterman, Inc. (1988), 123 Ill.2d 245, 261, 123 Ill.Dec. 473, 527 N.E.2d 1248; whether "An Act in relation to contribution among joint tortfeasors" (Contribution Act) (Ill.Rev.Stat.1985, ch. 70, par. 301 et seq). effectively abolished actions for common law implied indemnity for situations involving vicarious liability. We conclude it did not.

BACKGROUND
The question arises here pursuant to a medical malpractice action brought on the behalf of Kennicki Freeman, a young boy who suffered profound and irreversible brain damage due to oxygen deprivation during surgery at Columbus-Cuneo-Cabrini Medical Center (Medical Center). The initial complaint, filed by Sherron Freeman, Kennicki's mother, as guardian, alleged a single count against the Medical Center. In subsequent amendments, Dr. James Bransfield, the surgeon, Dr. Mohammed Hafeez, the anesthesiologist, Julia Lester, the nurse anesthetist, and Anesthesia Associates of Lake Shore, Ltd., the provider of anesthesia services at the Medical Center, were added as defendants. Sherron Freeman joined as co-plaintiff.
The Medical Center filed a counterclaim in two counts against Hafeez, Lester, and Anesthesia Associates of Lake Shore, Ltd. (collectively, the Anesthesia defendants). Count I alleged that, if the Medical Center were found vicariously liable for the acts of the Anesthesia defendants as its agents, the Medical Center would be entitled to indemnification. Alternatively, count II sought contribution in the full amount of any judgment against the Medical Center.
Pursuant to a settlement reached between plaintiffs and the Anesthesia defendants, the Anesthesia defendants were dismissed from the primary suit. The circuit court determined the settlement to be in good faith (see Ill.Rev.Stat.1985, ch. 70, par. 302(c)). The circuit court thereafter dismissed the Medical Center's counterclaim, concluding that the Contribution Act abolished common law implied indemnity.
*287 The Medical Center filed an interlocutory appeal (134 Ill.2d R. 304), and the appellate court affirmed (216 Ill.App.3d 494, 160 Ill. Dec. 59, 576 N.E.2d 1013). This appeal followed (134 Ill.2d R. 315).
The Action Against the Medical Center
Although it is the dismissal of the Medical Center's counterclaim that gives rise to the issue presented, it is important to clarify the pending allegations against the Medical Center. The Medical Center's liability affects our ultimate disposition.
Subsequent to Sherron Freeman's complaint, a second-amended complaint was filed by the American National Bank and Trust Company as guardian of Kennicki Freeman's estate. Sherron Freeman remained a co-plaintiff. Like the initial complaint, the second-amended complaint alleged negligence against each defendant for conduct related to the surgery. Against the Medical Center, however, two new and different allegations were added. It was alleged that the Medical Center was negligent in permitting unqualified anesthesiologists to provide anesthesia and otherwise failed to provide quality anesthesia care.
The issue of whether the Contribution Act abolished common law implied indemnity arises here only because of the Medical Center's potential vicarious liability. Disposition of that issue would not resolve any issue regarding whether the Medical Center might be entitled to contribution as a result of direct liability.
However, subsequent to the Medical Center's appeal to the appellate court, a thirdamended complaint was filed. The appellate court allowed the record to be supplemented with that complaint. The thirdamended complaint alleges only derivative liability against the Medical Center for the conduct of Hafeez, Lester, "and others" respecting presurgery and surgery procedures. In light of those pending allegations, it would appear that the only remaining issue with regard to the Medical Center's liability concerns the viability of common law implied indemnity after the Contribution Act.

DISCUSSION
We need not here review the doctrine of common law implied indemnity. In the wake of Skinner v. Reed-Prentice Division Package Machinery Co. (1977), 70 Ill.2d 1, 15 Ill.Dec. 829, 374 N.E.2d 437, and its codification in the Contribution Act, this court has taken the opportunity to do so on several occasions, tracing the "metamorphosis" (Allison, 113 Ill.2d at 28, 99 Ill.Dec. 115, 495 N.E.2d 496) of the doctrine from its restitutionary roots. We refer specifically to Dixon v. Chicago & North Western Transportation Co. (1992), 151 Ill.2d 108, 176 Ill.Dec. 6, 601 N.E.2d 704, Allison, 113 Ill.2d 26, 99 Ill.Dec. 115, 495 N.E.2d 496, and Frazer, 123 Ill.2d 245, 123 Ill.Dec. 473, 527 N.E.2d 1248, and direct attention to those cases in lieu of repetition here. For purposes of this opinion, we believe it necessary only to keep in mind that implied indemnity, as a means to ameliorate the harshness of the rule which prohibited contribution, evolved from two different theories, one based on tort principles and one based on quasi-contract principles. See Kandaras & Kelley, New Developments in the Illinois Law of Contribution Among Joint Tortfeasors, 23 Loy.U.Chi.L.J. 407, 441 (1992).
The theory based on tort principles gave rise to "equitable" implied indemnity. (Allison, 113 Ill.2d at 30, 99 Ill.Dec. 115, 495 N.E.2d 496.) The rationale for the doctrine of equitable implied indemnity rested on the injustice in allowing a more culpable or "active" tortfeasor to escape liability at the unilateral choice of the plaintiff. (See 23 Loy.U.Chi.L.J. at 441.) However, in Allison, this court rejected the "active/passive" negligence doctrine borne of that theory, reasoning that implied indemnity based on relative fault no longer served a valid purpose after the Contribution Act. (Allison, 113 Ill.2d at 31-32, 99 Ill.Dec. 115, 495 N.E.2d 496; 23 Loy. U.Chi.L.J. at 442.) Later, in Frazer and Thatcher v. Commonwealth Edison Co. (1988), 123 Ill.2d 275, 123 Ill.Dec. 486, 527 N.E.2d 1261, this court found no reason to preclude comparison of the negligence of one tortfeasor with the strict liability of *288 another, expanding upon the nature of culpable conduct to which the Act reached. In short, in view of the scope of the Contribution Act, reason to support implied indemnity based on tort principles of relative blameworthiness has ceased to exist.
However, the theory supporting implied indemnity in a quasi-contractual context is supported by a fundamentally different premise. (Frazer, 123 Ill.2d at 255, 123 Ill.Dec. 473, 527 N.E.2d 1248.) That premise recognizes that the law may impose upon a blameless party liability derivatively through another's conduct. (Frazer, 123 Ill.2d at 255, 123 Ill.Dec. 473, 527 N.E.2d 1248.) Thus, as this court has acknowledged, reason may exist to continue to recognize the viability of implied indemnity where a principal is vicariously liable for the conduct of an agent or for the nondelegable acts of an independent contractor. 23 Loy.U.Chi.L.J. at 443; see Frazer, 123 Ill.2d at 261, 123 Ill.Dec. 473, 527 N.E.2d 1248.
The appellate court here concluded that continued recognition of implied indemnity based on a pretort principal-agent relationship subverted the Contribution Act's goals of eliminating inequity between joint tortfeasors and of encouraging settlement. (216 Ill.App.3d at 500, 501, 160 Ill.Dec. 59, 576 N.E.2d 1013.) The court was persuaded by the difficulty in defining pretort relationships (216 Ill.App.3d at 500, 160 Ill.Dec. 59, 576 N.E.2d 1013) and because parties in a traditional principal-agent relationship remain free to provide for indemnity by contract (216 Ill.App.3d at 501, 160 Ill.Dec. 59, 576 N.E.2d 1013).
The court viewed the terms of the Contribution Act to be compatible with the aim of indemnification. (216 Ill.App.3d at 501-02, 160 Ill.Dec. 59, 576 N.E.2d 1013.) Specifically, under the Act, a tortfeasor is entitled to contribution beyond that tortfeasor's pro rata share of common liability based on relative fault. (See Ill.Rev.Stat.1985, ch. 70, pars. 302, 303.) Thus, in cases of vicarious liability based on a principal-agent relationship, the Act could accommodate a finding of 0% liability against the blameless principal and 100% liability against the agent at fault in fact. (216 Ill.App.3d at 502, 160 Ill.Dec. 59, 576 N.E.2d 1013.) The court therefore concluded that the Contribution Act "supersede[d]" common law implied indemnity for vicarious liability based on such relationships. 216 Ill.App.3d at 500, 160 Ill.Dec. 59, 576 N.E.2d 1013.
The Anesthesia defendants urge us to affirm that conclusion, directing us to the "tide of authority" represented by appellate decisions in agreement both directly and in dicta. See Mid-America Bank & Trust Co. v. Commercial Union Insurance Co. (1992), 224 Ill.App.3d 1083, 167 Ill.Dec. 199, 587 N.E.2d 81; Heinrich v. Peabody International Corp. (1985), 139 Ill.App.3d 289, 93 Ill.Dec. 544, 486 N.E.2d 1379, aff'd in part & rev'd in part (1987), 117 Ill.2d 162, 109 Ill.Dec. 821, 510 N.E.2d 889; Cleggett v. Zapianin (1989), 187 Ill. App.3d 872, 135 Ill.Dec. 324, 543 N.E.2d 892; Frazer v. A.F. Munsterman, Inc. (1986), 145 Ill.App.3d 1092, 99 Ill.Dec. 734, 496 N.E.2d 309, aff'd (1988), 123 Ill.2d 245, 123 Ill.Dec. 473, 527 N.E.2d 1248; Thatcher v. Commonwealth Edison Co. (1986), 147 Ill.App.3d 534, 101 Ill.Dec. 39, 497 N.E.2d 1352, aff'd (1988), 123 Ill.2d 275, 123 Ill.Dec. 486, 527 N.E.2d 1261; 535 North Michigan Condominium Association v. BJF Development, Inc. (1986), 143 Ill.App.3d 749, 97 Ill.Dec. 629, 493 N.E.2d 111; Hanlon v. Airco Industrial Gases (1986), 148 Ill.App.3d 1039, 102 Ill.Dec. 601, 500 N.E.2d 494; Holmes v. Sahara Coal Co. (1985), 131 Ill.App.3d 666, 86 Ill.Dec. 816, 475 N.E.2d 1383; Morizzo v. Laverdure (1984), 127 Ill.App.3d 767, 775, 83 Ill.Dec. 46, 469 N.E.2d 653 (Downing, J., specially concurring).
This court has before indicated its disagreement with the conclusion that the Contribution Act abolished all forms of common law implied indemnity. (See Thatcher, 123 Ill.2d at 279, 123 Ill.Dec. 486, 527 N.E.2d 1261.) The right to contribution is set out in sections 2 and 3 of the Contribution Act. Section 2(b) provides that contribution is available only to a tortfeasor who has paid more than his "pro rata share of the common liability." (Ill. *289 Rev.Stat.1985, ch. 70, par. 302(b).) Section 3 equates a tortfeasor's "pro rata share" with "relative culpability." (Ill.Rev.Stat. 1985, ch. 70, par. 303.) There is nothing in either of those sections to suggest the abolishment of implied indemnity in the quasi-contractual context. (23 Loy.U.Chi.L.J. at 447.) That is so, commentators have observed, because:
"In the quasi-contractual relationship, * * * one cannot speak of the indemnitee's pro rata share as somehow distinct from the indemnitor's. The pro rata share for a party who is vicariously liable is that amount charged to its indemnitor. Thus, when the indemnitee is forced to pay for the plaintiff's injuries, the indemnitee's entire payment exceeds its pro rata share of fault for the injuries." 23 Loy.U.Chi.L.J. at 448.
Admittedly, in a true action for indemnification arising from vicarious liability, application of the theory of contribution should achieve a result identical to that of implied indemnityapportionment to the indemnitor of 100% of the fault for the plaintiff's injuries. (23 Loy.U.Chi.L.J. at 448.) However, merely because the Contribution Act may, in that sense, accommodate a theory of implied indemnity is no reason to conclude that the Act abolished the doctrine in the quasi-contractual context.
The statutory contribution scheme is premised on fault-based considerations. As such, it is theoretically "ill-suited to the task of addressing" quasi-contractual relationships. (23 Loy.U.Chi.L.J. at 448.) In cases of vicarious liability, there is only a basis for indemnity, not for apportionment of damages as between the principal and agent (Bristow v. Griffitts Construction Co. (1986), 140 Ill.App.3d 191, 198, 94 Ill. Dec. 506, 488 N.E.2d 332, citing W. Keeton, Prosser & Keeton on Torts § 52, at 346 (5th ed. 1984)). Only the agent is at fault in fact for the plaintiff's injuries. (See Bristow, 140 Ill.App.3d at 198, 94 Ill.Dec. 506, 488 N.E.2d 332.) The viability of implied indemnity in the quasi-contractual situation insures that a blameless principal cannot be found legally accountable. We therefore hold that common law implied indemnity was not abolished by the Contribution Act in quasi-contractual relationships involving vicarious liability.
We do not believe that that conclusion undermines the Contribution Act's goal of encouraging settlement. The concern arises in view that a good-faith settlement under the Act does not discharge "other tortfeasors" from liability unless its terms so provide. (Ill.Rev.Stat.1985, ch. 70, par. 302.) The point is that, if implied indemnity against an agent is not barred by a plaintiff's settlement with the agent, there is little to encourage the agent's desire to settle. (23 Loy.U.Chi.L.J. at 446.) Yet, if implied indemnity is precluded by such a settlement in which the plaintiff retains all legal claims against the principal, the settlement defeats the purpose of retaining implied indemnity. 23 Loy.U.Chi.L.J. at 446-47.
Reconciliation of those concerns begins, again, with recognition that the Contribution Act is addressed only to the relative culpability of tortfeasors at fault in fact. In a case of vicarious liability in the quasi-contractual context, the principal simply cannot be one of the "other tortfeasors" to which section 3 of the Contribution Act refers. (Bristow, 140 Ill.App.3d at 198, 94 Ill.Dec. 506, 488 N.E.2d 332.) The principal is blameless.
Commentators have suggested that the approach of the appellate court in Bristow v. Griffitts Construction Co. (1986), 140 Ill.App.3d 191, 94 Ill.Dec. 506, 488 N.E.2d 332, provides a means to rationally reconcile concerns regarding the effect of settlements in the quasi-contractual context given viability of implied indemnity. (23 Loy.U.Chi.L.J. at 447.) That approach simply recognizes that any settlement between the agent and the plaintiff must also extinguish the principal's vicarious liability. (Bristow, 140 Ill.App.3d 191, 94 Ill.Dec. 506, 488 N.E.2d 332; 23 Loy.U.Chi.L.J. at 447.) We adopt that approach. We direct that, in such cases, an order should be entered to reflect the extinguishment of the principal's vicarious liability. To the extent that the principal's potential liability *290 is solely derivative, the order should dismiss the principal from the action.
Parenthetically, we also agree with those commentators that settlements between the principal and the plaintiff merit different consideration. (23 Loy. U.Chi.L.J. at 447 n. 272.) Such a settlement has the effect of creating, in the blameless principal, an interest indistinguishable from the contribution interests of the "other tortfeasors" at fault in fact. (23 Loy.U.Chi.L.J. at 447 n. 272.) The Contribution Act should therefore apply. The release of the agent from liability to the plaintiff, as well as preservation of the principal's implied indemnity claim, depends, then, on the agent's being named in the settlement. 23 Loy.U.Chi.L.J. at 447 n. 272.
We therefore conclude the Medical Center's counterclaim should not have been dismissed on the basis that the Contribution Act abolished common law implied indemnity in quasi-contractual situations. Accordingly, we reverse the appellate and circuit courts' determination of that issue. We direct that, on remand, the circuit court enter an appropriate order. Our disposition makes it unnecessary to address issues respecting the circuit court's determination that the settlement was in good faith (see 216 Ill.App.3d at 503-04, 160 Ill.Dec. 59, 576 N.E.2d 1013).
The judgments of the circuit and appellate courts are reversed and the cause is remanded with directions.
Reversed and remanded, with directions.