**In re Beverly SMITH, Debtor.**

**Beverly Smith, Plaintiff,**

**v.**

**Keith V. Elzey, et al., Defendants.**

**Bankruptcy No. 98 B 29763.**
**Adversary No. 00 A 00165.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 18, 2002.

Leonard Murray, Salone, Simons & Murray, Chicago, IL, for Plaintiff.

438

Thomas G. Gardiner, John R. Wrona, Gardiner, Koch, Hines & Weisberg, Chicago, IL, for Defendant Kaplan and Layne Financial Services.

David Rosenberg, Keith Elzey, Lee Scott Perres, Marcus Perres Campanale & Wigoda, Chicago, IL, Other Attorneys/Parties.

## MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

Debtor–Plaintiff, Beverly Smith ("Plaintiff" or "Smith"), filed a Chapter 13 bankruptcy on September 22, 1998. Her Chapter 13 Plan was confirmed on December 17, 1998, and amended July, 27, 2000. That Plan made no mention of the causes of action asserted herein.

Plaintiff filed the original Adversary Complaint here on February 9, 2000. A First Amended Complaint was filed on April 27, 2000, which alleged six Counts: Count I sought to quiet title to a residence owned by Plaintiff; Count II charged conspiracy to charge "points" in excess of those allowed under the Illinois Interest Act on a mortgage loan to Plaintiff; Count III averred conspiracy to defraud Plaintiff into surrendering title to her residence; Count IV charged violation of the Fair Debt Collection Practices Act; Count V charged violation of the Consumer Fraud & Deceptive Practices Act; and Count VI claimed joint and several liability for unjust enrichment. Plaintiff's counsel dismissed, without prejudice, Count II of the First Amended Complaint by oral motion on October 30, 2000. As discussed below, Plaintiff also dismissed a number of the defendants charged in the First Amended Complaint.

The pending Second Amended Complaint was filed on July 6, 2001. It alleges six counts filed against Century Mortgage, Inc. ("Century") and the other co-defendants Keith V. Elzey (individually and d/b/a Equity Real Estate Investments) and Aryeh M. Keefe: Complaint against Century to Quiet Title to Real Estate (Count I), Conspiracy by all defendants (Count II), Fraud by Century (Count III), violation of the Fair Debt Collection Practices Act by Century (FDCPA) (Count IV), and violation by all defendants of the Consumer Fraud and Deceptive Practices Act (CFDPA) (Count V), and unjust enrichment by all defendants (Count VI). All events complained of occurred pre-bankruptcy. Century failed to answer or appear and an order of default was entered against it on March 5, 2001, and the order provided that all allegations of the Complaint were taken as confessed against it.

In the pending Second Amended Complaint, Count I lies only against Century for the alleged actions of its agent; the relief sought by Plaintiff is to quiet title to a residence at 7815 South Damen Avenue in Chicago, Illinois. Plaintiff seeks unspecified compensatory and punitive damages against Century in Counts III and IV of the complaint. Plaintiff seeks to hold all defendants jointly and severally liable for compensatory and punitive damages arising from the remaining Counts (including the same Count II as was earlier dismissed from the First Amended Complaint on Plaintiff's motion October 30, 2000, as stated above).

Plaintiff has moved for entry of default judgment against Century pursuant to Fed.R.Bankr.P. 7055(b) and supplemented the allegations of the Complaint against Century with a prove-up affidavit. But for reasons stated below, Plaintiff's motion is denied as to all Counts.

### FINDINGS OF FACT

Based upon defaulted pleadings and affidavits filed, certain facts have been established:

1. Smith is a resident of Chicago, Illinois and owner of a home at 7815 South Damen Avenue ("the property").

2. Century is an Illinois corporation doing business in Chicago.

3. On December 9, 1994, Smith was defending a foreclosure action pertaining to the property in state court.

4. After the foreclosure action was filed, Defendant Keith Elzey ("Elzey") came to Smith's home and offered to help her to obtain a loan so that she could save her house from foreclosure.

5. Elzey then brought a Century employee, John Skura ("Skura"), to Smith's home to prepare a loan application. The parties executed a mortgage loan for $44,000 at 18% interest on February 3, 1995. Smith was charged loan fees that are the subject of this dispute.

6. Century assigned its interest in the mortgage to Murray Kaplan ("Kaplan") d/b/a Layne Financial Services on the same day as the closing.

7. On March 5, 1995, Kaplan mailed Smith a Warranty Deed in Lieu of Foreclosure which Kaplan said should have been executed at the closing. Smith was instructed to sign and return the Deed to Kaplan, which she did. Smith did not seek legal counsel prior to signing the document and asserts that she did not understand that by signing the document she was conveying her home to Century. (Exhibit C, Plaintiff's Second Amended Complaint). The Deed was recorded in Cook County on May 16, 1997.[1]

8. On November 30, 1995, Smith received a letter from Kaplan, who identified himself as an attorney, stating that Century would initiate a foreclosure action against Smith on December 5, unless Smith paid all past due payments owed to Century. (Exhibit B, Plaintiff's Second Amended Complaint).

9. Kaplan was not and is not an attorney licensed to practice in Illinois.

10. Kaplan refused to accept any partial payments from Smith and demanded that Smith pay $6,400.58 in interest and attorney fees to bring the loan current or she would be evicted. (Exhibit D, Plaintiff's Second Amended Complaint).

11. On June 10, 1997, Century filed a forcible entry and detainer action in Cook County Circuit Court. Kaplan was subsequently substituted for Century in an amended complaint for mortgage foreclosure, but the case was voluntarily dismissed in October 1999.

12. The original Adversary Complaint here named Murray Kaplan both individually and d/b/a Layne Financial Services, John J. Skura, Keith V. Elzey both individually and d/b/a Equity Real Estate Investments, Clifford R. Cook, Century Mortgage, Inc., and Law Title Insurance Co., Inc. Plaintiff later dismissed Clifford R. Cook and Law Title Insurance Co., Inc. with prejudice.

13. Smith also dismissed Skura and Elzey without prejudice in October 2000. Smith and Kaplan also entered into an agreed order dismissing Kaplan "individually and d/b/a as Layne Financial Services" with prejudice June 28, 2001, while the

---

1. Smith states in her prove-up affidavit that Kaplan "forwarded" her the deed. Smith Proveup Affidavit ¶ 6. This is consistent with the complaint wherein Smith says Kaplan mailed her the deed. Second Amended Complaint ¶ 20. However, Smith's Affidavit in Support of her Proposed Conclusions of Law states that "Century requested and directed" that she execute the deed "at the time of closing." The deed was notarized for the same date as the closing, but the exemption from transfer tax (on the face of the deed) was dated March 5.

First Amended Complaint was pending. At that time, Kaplan was charged in Counts I, III and IV. Smith later moved to vacate the order dismissing Elzey, and Elzey was reinstated as a defendant in June of 2001, and Aryeh Keefe was added as a defendant. The instant Second Amended Complaint was filed July 6, 2001.

14. Any additional facts set forth in the Conclusions of Law comprise additional fact findings.

## CONCLUSIONS OF LAW

### Jurisdiction

■ The jurisdiction of bankruptcy judges is derivative of the district court's jurisdiction over cases under the Bankruptcy Code. 28 U.S.C. §§ 1334(a)-(b). *Matter of FedPak Systems, Inc.,* 80 F.3d 207, 213 (7th Cir.1996). Section 1334(b) extends the jurisdiction of the district courts [and thereby bankruptcy courts] to "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

Authority in this Circuit holds that 1334(b) allows traditional state claims by or against the debtor, such as tort or contract claims that may impact the distribution to creditors, to be heard here under related jurisdiction of the bankruptcy court. That allows the bankruptcy judge to hear but not finally determine the issues. *Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159, 161–62 (7th Cir.1994). In cases of related jurisdiction, bankruptcy judges may only enter recommended conclusions of law and findings of fact which are subject to de novo review by the district court which enters final judgment. *Phar–Mor, Inc., v. Coopers & Lybrand,* 22 F.3d 1228, 1235 (3rd Cir.1994).

■ As noted earlier, Debtor's Chapter 13 Plan was confirmed. In a Chapter 13 bankruptcy, property of the debtor's estate including any pre-bankruptcy cause of action owned by the debtor revests in the debtor upon confirmation of a Chapter 13 Plan 11 U.S.C. § 1327(b); *Matter of Heath,* 115 F.3d 521, 524 (7th Cir.1997) (In Chapter 13, property not needed to fulfill terms of the confirmed plan revests in debtor upon confirmation). However, such revesting does not obviate related jurisdiction over the instant adversary. Related jurisdiction still lies here because any recovery obtained by Smith can be reached after confirmation by the Chapter 13 trustee to pay creditors more than the confirmed Plan provides. 11 U.S.C. § 1329.[2] *See also Diamond Mortgage Corp. of Illinois v. Sugar,* 913 F.2d 1233, 1239 (7th

---

**2.** 1329. Modification of plan after confirmation

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b) (1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

Cir.1990) (claim is related claim where its resolution could impact the distribution to creditors), and *Barbosa v. Soloman,* 235 F.3d 31, 37 (1st Cir.2000) (even after property vests in debtor, trustee can modify payments under § 1329 to increase distribution to creditors).

Therefore, related jurisdiction lies here pursuant to § 1334(b) and 28 U.S.C. § 157(a). This matter is referred here by District Court Internal Operating Procedure 15(a). Venue is proper in this district under to 28 U.S.C. § 1409(a).

### Standard for Default Judgment

■ Upon default, all well-plead facts in the complaint are deemed admitted. *Geddes v. United Financial Group,* 559 F.2d 557, 560 (9th Cir.1977), but entry of default judgement does not automatically result after default. *Bermudez v. Reid,* 733 F.2d 18, 21 (2nd Cir.1984). Default judgments should not always be entered as a response to some omission by a defendant. *Stafford v. Mesnik,* 63 F.3d 1445, 1450 (7th Cir.1995). The trial court has discretion to determine whether allegations in the complaint establish a valid cause of action. Fed.R.Bankr.P.7055(b).

### Was there an agency relationship between Smith and Kaplan?

■ Smith avers that Kaplan was acting as an agent for Century. It is understandable that Smith would argue this conclusion since the letters from Kaplan so state, and the forcible detainer action was initially filed on behalf of Century. However, the pleadings show that there is some doubt as to whether Kaplan was actually acting on behalf of Century. It appears that during the time that Kaplan was purportedly attempting to recover payments owed to Century, he was actually representing himself because Century had assigned its mortgage to Kaplan on the same day as the closing. Likewise, Century may not have had an interest in the property when Kaplan sent the Deed to Smith and when he filed the forcible detainer action. This explains why Kaplan eventually amended the complaint filed in state court to substitute in as a party Plaintiff.

### Is Plaintiff barred by res judicata from litigating Counts I, III, and IV?

Assuming arguendo that Kaplan proves to have been acting as an agent for Century, the claims against Century involving Kaplan "as agent" might be barred under the doctrine of *res judicata* by the dismissal of Kaplan from this case with prejudice.

■ Three elements must be shown before a claim is barred from federal court under the doctrine of *res judicata:* (1) the issues before the court are identical; (2) the parties in the litigation are the same; and (3) there was a final adjudication of the issues in the previous litigation. *Golden v. Barenborg,* 53 F.3d 866, 869. In the instant case, Counts I and III of the Second Amended Complaint (which are virtually identical) are based on Smith's claim that she was deceived by Kaplan's conduct as asserted agent for Century into conveying her home to Century. Smith avers that she received a letter from Kaplan on or about March 5, 1995, which contained a Deed in Lieu of Foreclosure, and that she signed the Deed after Kaplan told her it was something that should have been signed at the closing. Smith argues that she was unaware that the Deed conveyed her interest in the property to Century and that at the time she executed the Deed she was not in default on her mortgage, as is required by Illinois law. See 735 ILCS 5/15–1401.[3]

---

**3.** 5/15–1401. Deed in lieu of foreclosure

§ 15–1401. Deed in Lieu of Foreclosure.

Count IV further alleges that Kaplan, acting as an agent for Century, engaged in conduct prohibited by the Fair Debt Collection Practices Act by, *inter alia*, posing as an attorney engaged to collect money owed to Century.

Thus, there is no doubt that the litigation against Kaplan arose from the same core facts as those confronting Century in the pending Counts. Further, Smith asserts vicarious liability against Century for the actions of Kaplan. Therefore, for purposes of this litigation, the parties are identical. *Golden*, 53 F.3d at 871 (agent and principal are identical parties in litigation).

■ The settlement agreement dismissing Kaplan with prejudice was a final adjudication of claims against him under Counts I, III, and IV and claims that could have been litigated against him in those Counts. *See Crop–Maker Soil Services, Inc. v. Fairmount State Bank*, 881 F.2d 436, 439 (7th Cir.1989) (citation omitted) (noting preclusive effect of res judicata). This conclusion is supported by the fact that the settlement agreement between Smith and Kaplan included the release of any mortgage on the premises at issue (thereby possibly mooting Count I of Smith's adversary against Century). It is settled law in this Circuit and in Illinois that the dismissal of an agent constitutes a dismissal against the principal whose liability is only derivative. *See Golden v. Barenborg*, 53 F.3d 866, 871 (7th Cir.1995)

(citing *American National Bank & Trust Co. v. Columbus–Cuneo–Cabrini Medical Center*, 154 Ill.2d 347, 181 Ill.Dec. 917, 609 N.E.2d 285 (1992)). In light of the Fact Findings earlier stated, however, Kaplan may not have been Century's agent and if he was not, then Smith would not be barred by Kaplan's dismissal from judgment against Century on Counts I, III, and IV, by reason of *res judicata*. But if evidence at trial shows that Kaplan acted at critical times as Century's agent rather than as a party in his own interest, then the derivative claims against Century may be barred. It is difficult to see any legal theory on which Century may be held derivatively liable if Kaplan was not acting as Century's agent.

### *May Counts V and VI be preempted by federal law?*

■ Counts V and VI arise from the fact that Century allegedly charged closing costs that exceeded the 3% allowed under the Illinois Interest Act. 815 ILCS 205/4.1a. Specifically, Smith charges that Century, through its agent Skura, charged $4,595, or better than 10%, in additional fees on the $44,000 lent to Smith. The Illinois Interest Act provides in relevant part:

> The percentage of the principal amount of the loan represented by all of such charges shall first be computed, which in the case of a loan with an interest rate

The mortgagor and mortgagee may agree on a termination of the mortgagor's interest in the mortgaged real estate after a default by a mortgagor. Any mortgagee or mortgagee's nominee may accept a deed from the mortgagor in lieu of foreclosure subject to any other claims or liens affecting the real estate. Acceptance of a deed in lieu of foreclosure shall relieve from personal liability all persons who may owe payment or the performance of other obligations secured by the mortgage, including guarantors of such indebtedness or obligations, except to the extent a person agrees not to be relieved in an instrument executed contemporaneously. A deed in lieu of foreclosure, whether to the mortgagee or mortgagee's nominee, shall not effect a merger of the mortgagee's interest as mortgagee and the mortgagee's interest derived from the deed in lieu of foreclosure. The mere tender of an executed deed by the mortgagor or the recording of a deed by the mortgagor to the mortgagee shall not constitute acceptance by the mortgagee of a deed in lieu of foreclosure.

in excess of 8% per annum secured by residential real estate . . . shall not exceed 3% of such principal amount.

815 ILCS 205/4.1a. The penalty for violating Section 4.1a is double the total interest on the loan. 815 ILCS 205/6.

However, in *Currie v. Diamond Mortgage Corp. of Illinois*, 859 F.2d 1538 (7th Cir.1988) the panel opinion held that the Illinois Interest Act was preempted by the federal Depository Institutions Deregulation and Monetary Control Act ("DIDCMA"), which provides in relevant part:

(1) The provisions of the constitution or laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is—

(A) secured by a first lien on residential real property . . .

(B) made after March 31, 1980; and

(C) described in section 527(b) of the National Housing Act . . .

12 U.S.C. § 1735f–7.[4],[5]

The DIDCMA only applies to lenders that provide over a year more than $1,000,000 in total residential real estate loans or that meet other specific criteria outlined in subchapter V of the National Housing Act.

■ Since authority has held that DIDCMA preempts Section 4.1a., *Currie*, 859 F.2d at 1542; *Smith v. First Union National Bank*, No. 01 C 1719, 2002 WL 731133, at *3 (N.D.Ill.); *Reed v. World Wide Financial Services, Inc.*, No. 98 C 4294, 1998 WL 852854, at *2 (N.D.Ill.) (citing *Gora v. Banc One Financial Services, Inc.*, No. 95 C 2542, 1995 WL 613131 (N.D.Ill.)), it must be decided whether that federal Act applies here by its terms. Applying the first two statutory elements enumerated above to the facts here shows that: (1) the loan made to Smith was secured by a first priority security interest secured by real estate and (2) the loan was given after March 31, 1980. However, Plaintiff has not yet established whether the loan meets the third element of a "federally related mortgage loan" described in Section 527(b) of the National Housing Act. 12 U.S.C. § 1735f–5(b). Smith's filings did not address whether DIDCMA applies to the Century loan. Smith makes what might be construed as an oblique reference to DIDCMA when she avers that the loan from Century was not a purchase-money loan, since an Illinois Appellate Court opinion has held that DIDCMA only applies to purchase-money loans. *Fidelity Financial Services*, 214

---

**4.** The *Currie* decision further opined that Section 4.1a of the Illinois Interest Act was repealed by implication because it was deemed irreconcilable with Section 4 of the same Act (enacted after Section 4.1a) which allowed parties to agree to any interest rate on a home mortgage. *Currie*, 859 F.2d at 1542–43. However, any confusion over whether Section 4.1a was repealed was resolved by the opinion in *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill.App.3d 398, 158 Ill.Dec. 221, 574 N.E.2d 15 (1st Distr.1991), which explained that Section 4 dealt with the general cost of money whereas Section 4.1a limits the fees that can be charged on top of the principal. *Jackson v. Resolution GGF Oy*, 136 F.3d

1130, 1131 (7th Cir.1998). Therefore, the two statutes are not mutually exclusive.

**5.** Congress has allowed states to opt out of DIDCMA by providing that "[a]t any time after March 31, 1980 any state may adopt a provision of law placing limitations on discount points or such other charges on any loan, mortgage, credit sale, or advance described in subsection a(1) of this section." 12 U.S.C. § 1735f–7a(b)(4). However, Illinois has not exercised its right to invoke its own usury statute, even though it effectively amended portions of Section 4.1a in 1992. See 815 ILCS 205/4.1a (Historical and Statutory notes).

Ill.App.3d 398, 158 Ill.Dec. 221, 574 N.E.2d at 21 (1st Dist.1991). But that view has been rejected by a District Court opinion in *Gora* and opinions in other Circuits. *Gora v. Banc One Financial Services, Inc.*, No. 95 C 2542, 1995 WL 613131, at *5 (N.D.Ill.); *Brown v. Investors Mortgage Co.*, 121 F.3d 472, 475 (9th Cir.1997); *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 907 (3rd Cir.1990).

If the mortgage loan in issue here is bound by DIDCMA, Smith cannot pursue her claims under Counts V and VI. At trial she will have a chance to show that DIDC-MA does not apply, but has not done so on the present record.

*The Motion as to Count VI must be denied as a matter of law.*

■ Count VI is based on the equitable doctrine of unjust enrichment under which a contract will be implied between parties to avoid injustice. However, that doctrine does not apply where, as here, there is an express contract. *Noah v. Enesco Corp.*, 911 F.Supp. 305, 307 (N.D.Ill.1995). There is no doubt that Smith originally entered into a contract with Century for the mortgage at issue and that the $4,595 in charges were included in the written agreement between Smith and Century. Thus, Smith cannot now appeal to equity to deprive Century of the fruits of that contract under a theory of unjust enrichment.

## CONCLUSION

Even taking allegations from the Second Amended Complaint and prove-up affidavit as true, Smith has failed to show that she is entitled to default judgment against Century. For reasons outlined above, the motion for default judgment is denied as to all Counts, and a trial date will be set.