# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-1018

ILLINOIS ASSOCIATION OF MORTGAGE BROKERS,

*Plaintiff-Appellant*,

v.

OFFICE OF BANKS AND REAL ESTATE
and WILLIAM A. DARR,

*Defendants-Appellees*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 5151—**Charles R. Norgle, Sr.**, *Judge*.

———————

ARGUED SEPTEMBER 17, 2002—DECIDED OCTOBER 21, 2002

———————

Before FLAUM, *Chief Judge*, and EASTERBROOK and
RIPPLE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. The Alternative Mortgage
Transaction Parity Act of 1982, 12 U.S.C. §§ 3801-06,
provides that state-chartered lenders may make variable-
interest home mortgage loans (called "alternative mortgage
transactions") on the same terms as federally-chartered
lenders, "notwithstanding any State constitution, law, or
regulation." 12 U.S.C. §3803(c). The Home Ownership and
Equity Protection Act of 1994, codified at 15 U.S.C.
§§ 1602(aa), 1610, 1639, and 1640, forbids lenders from

using particular terms in home mortgage transactions. The question presented by this appeal is whether the 1994 Act's regulation of all home mortgage lenders repeals the 1982 Act's rule of parity between state and federal institutions in alternative mortgage transactions. The district court answered yes and held that, as a result, regulations imposing extra restrictions on state-chartered lenders in Illinois are valid. *Illinois Ass'n of Mortgage Brokers v. Office of Banks & Real Estate*, 174 F. Supp. 2d 815 (N.D. Ill. 2001). We answer no. The 1994 Act does not repeal the 1982 Act in so many words, and implied repeal occurs only when the statutes are irreconcilable. See *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred International, Inc.*, 534 U.S. 124, 141-44 (2001) (collecting authority). All the district court concluded, however, is that the 1982 and 1994 Acts concern the same subject matter. That is not, and never has been, enough to show that the most recent statute repeals its predecessors. Substantive rules in one law are not logically incompatible with an equal-treatment rule in another, so both remain effective.

What Illinois has done is to issue regulations that augment—for state-chartered lenders only—restrictions of the kind imposed by the 1994 Act. The handling of balloon payments provides an example. Under the 1994 Act, if a home equity loan carries an interest rate more than 10% over the rate for Treasury securities of comparable maturity, then the loan may not include a balloon payment (which effectively compels refinancing) unless the loan's duration exceeds five years. 15 U.S.C. §§ 1602(aa), 1639(e). Under the state regulations, if a home equity loan carries an interest rate more than 6% over the Treasury rate (8% for junior mortgages), then no balloon payment may be scheduled before the loan's 15th year. 38 Ill. Admin. Code §§ 1050.155, 1050.1270. Thus a federal lender lawfully may extend mortgage credit at 9% over the Treasury rate with a balloon payment in Year 3, or at 12% over the Treasury

rate with a balloon payment in Year 6, but a lender chartered in Illinois is forbidden to make either of these loans. The state regulations create other differences concerning prepayment penalties and amortization schedules, but it is unnecessary to detail them.

Plaintiff, an association of mortgage lenders, filed this suit seeking a declaratory judgment that the state regulations are preempted by virtue of §3803(c) as applied to lenders that comply with all applicable federal laws and regulations. The district judge concluded that the Association has standing as a representative of its members. 174 F. Supp. 2d at 818-20. The point is uncontested on appeal, but because it is jurisdictional we have given it independent consideration and agree with the judge's conclusion.

Another jurisdictional issue escaped the district judge's eye, however: the state agency contends that under the eleventh amendment a federal court lacks jurisdiction to entertain the suit. The Office of Banks and Real Estate, an agency of state government and thus part of the State of Illinois, is entitled to the State's immunity from suit. The Association contends that as long as it seeks prospective relief the eleventh amendment melts away. This is wrong, see *Cory v. White*, 457 U.S. 85, 90-91 (1982); *Alabama v. Pugh*, 438 U.S. 781 (1978), but there is no need to consider whether the Constitution gives Illinois an immunity unless some federal statute gives the Association a claim for relief. See *Lapides v. University of Georgia*, 122 S. Ct. 1640, 1643 (2002). Section 3803(c) does not authorize lawsuits (though it may provide a defense to them). To come into court as the plaintiff, the Association relies on 42 U.S.C. §1983. Yet a state is not a "person" for purposes of §1983 and therefore may not be named as a defendant in a suit under that law. See *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). Plaintiff has not called to our attention any

other relevant federal statute that authorizes a suit directly against a state or one of its agencies.

Nonetheless the agency's director, William Darr, a second defendant, is subject to suit even though relief would run against him in his official capacity. See *Will*, 491 U.S. at 71 n.10. For such a person, *Ex parte Young*, 209 U.S. 123 (1908), eliminates any constitutional impediment to suit. See also *Verizon Maryland Inc. v. Public Service Commission of Maryland*, 122 S. Ct. 1753 (2002). Although the Supremacy Clause does not of its own force create rights enforceable under §1983, some statutes with preemptive force may do so. See *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107-08 (1989). It is not necessary for us to determine whether the 1982 Act is such a statute, cf. *Gonzaga University v. Doe*, 122 S. Ct. 2268 (2002), because federal jurisdiction is supplied by 28 U.S.C. §1331 in any event. For the reasons given in *Illinois v. General Electric Co.*, 683 F.2d 206, 211 (7th Cir. 1982), that statute supplies jurisdiction when the plaintiff seeks declaratory relief against regulation by a state agency and contends that the agency has violated federal law by adopting particular regulations. See also *Northeast Illinois Regional Commuter R.R. v. Hoey Farina & Downes*, 212 F.3d 1010, 1015-16 (7th Cir. 2000). So the agency must be dismissed as a defendant, but the suit may proceed against Darr.

This opinion's opening paragraph says all that is necessary to resolve the principal issue on appeal: the 1994 Act neither repeals the 1982 Act in terms nor is logically inconsistent with it, so the two may coexist. Accord, *National Home Equity Mortgage Ass'n v. Face*, 239 F.3d 633 (4th Cir. 2001). The Office of Thrift Supervision, which issues the federal regulations in this field, agrees; the explanation accompanying its latest set of rules, 67 Fed. Reg. 60542 (Sept. 26, 2002), demonstrates that the OTS views the 1982 Act as fully effective today. Illinois tries to make headway with 15 U.S.C. §1610(b), which provides:

> Except as provided in section 1639 of this title, this subchapter does not otherwise annul, alter or affect in any manner the meaning, scope or applicability of the laws of any State, including, but not limited to, laws relating to the types, amounts or rates of charges, or any element or elements of charges, permissible under such laws in connection with the extension or use of credit, nor does this subchapter extend the applicability of those laws to any class of persons or transactions to which they would not otherwise apply. The provisions of section 1639 of this title do not annul, alter, or affect the applicability of the laws of any State or exempt any person subject to the provisions of section 1639 of this title from complying with the laws of any State, with respect to the requirements for mortgages referred to in section 1602(aa) of this title, except to the extent that those State laws are inconsistent with any provisions of section 1639 of this title, and then only to the extent of the inconsistency.

This tells us that the 1994 Act does not itself preempt any state law—except that state laws about the mortgage transactions defined in §1602(aa) may not be more tolerant than the federal floor adopted in §1639. This does not alter the preemptive effect of other statutes, however; §1610(b) deals with "this subchapter" of Title 15, while the 1982 Act is codified in Title 12. Nor, contrary to Illinois' view, does §1610(b) say that if a given loan meets the criteria of §1602(aa) then states may add restrictions to the list in §1639. Although §1610(b) provides that nothing in the 1994 Act forbids states from regulating, it does not foreclose the possibility that some *other* federal law contains such a prohibition.

The City of Chicago, appearing as *amicus curiae*, adopts a different tack. It contends that §3803(c) does not provide

the clear statement required for preemption. What §3803(c) says is this:

> An alternative mortgage transaction may be made by a housing creditor in accordance with this section, notwithstanding any State constitution, law, or regulation.

Nothing could be clearer, provided that we know what an "alternative mortgage transaction . . . in accordance with this section" is. Section 3802(1) defines it this way:

> the term "alternative mortgage transaction" means a loan or credit sale secured by an interest in residential real property, a dwelling, all stock allocated to a dwelling unit in a residential cooperative housing corporation, or a residential manufactured home (as that term is defined in section 5402(6) of Title 42)—
>
> > (A) in which the interest rate or finance charge may be adjusted or renegotiated;
> >
> > (B) involving a fixed-rate, but which implicitly permits rate adjustments by having the debt mature at the end of an interval shorter than the term of the amortization schedule; or
> >
> > (C) involving any similar type of rate, method of determining return, term, repayment, or other variation not common to traditional fixed-rate, fixed-term transactions, including without limitation, transactions that involve the sharing of equity or appreciation;
>
> described and defined by applicable regulation[.]

This points in turn to "applicable" regulations issued by the OTS. Given the way §3802(1) works, a loan is not an "alter-

native mortgage transaction . . . in accordance with this section" unless it meets the descriptions and definitions of the OTS's regulations. That's the point of the statute's title: the Alternative Mortgage Transaction *Parity* Act of 1982. State lenders get to do what federal lenders are allowed to do by federal statutes and OTS regulations. Yet, Chicago points out, these regulations may be opaque—and our reading confirms that nonspecialists may struggle to grasp their meaning. Because the federal regulations may be unclear, and the statute makes preemption turn on the content of these regulations, the preemption clause itself does not meet the Supreme Court's clarity requirement, Chicago insists.

Some opinions say that Congress must be clear when it sets out to oust states from exercising normal regulatory powers. How far this principle extends beyond the norm identifying states and municipalities as *targets* of federal regulation, see *Gregory v. Ashcroft*, 501 U.S. 452 (1991), is not a subject we need plumb. For §3803(c) is as express as a preemption clause gets. The Supreme Court has never insisted that clarity extend to all of the operative rules. The holding in *Gregory* was that the ADEA did not apply to state judges because Congress had not made the statute's *domain* clear—and thus had not necessarily precipitated the constitutional conflict resolved in *Kimel v. Board of Regents*, 528 U.S. 62 (2000). The Court did not hold or even hint that if the statute unambiguously covered senior state officials, it nonetheless would be deemed inapplicable because some of the ADEA's substantive rules may be hard to interpret. Once Congress has made the decision to displace state rules with federal rules, debate about the content of those federal rules does not rescind the displacement. Otherwise pension law and labor law would remain the domain of state rules—for though both pension and labor statutes clearly preempt state law, there are many ambiguities in the federal rules. Just last Term, for example, the

Supreme Court divided five to four on the question whether ERISA permits Illinois to review coverage decisions made by welfare-benefit plans. See *Rush Prudential HMO v. Moran*, 122 S. Ct. 2151 (2002). It answered "to an extent" (see 122 S. Ct. at 2167 n.10, 2169-70 & nn.15, 16 for the reservations), and four Justices would have answered with a flat "no." Chicago apparently believes that because there was doubt, the answer should have been a ringing "yes," but that is not how any of the nine Justices approached the matter.

Chicago's further argument that §3803(c) is unclear because it applies only to "housing creditors"—which means to lenders licensed by state law to make home mortgage loans, see 12 U.S.C. §3802(2)—does not put a dent in the statute's scope. What Chicago is getting at is that states might make compliance with substantive rules (such as "no balloon payments before 15 years") a condition of obtaining a license; and an unlicensed lender can't take advantage of the preemption clause. Suffice it to say that Illinois has not itself argued that it can pull a fast one on Congress in this fashion. The point of the 1982 Act was to produce parity in the terms on which lenders may extend credit. Smuggling the regulation of terms into the criteria for issuing licenses, and then arguing that state-chartered lenders lose all benefits of the 1982 Act, would be a stunt unworthy of the State of Illinois—and ineffective as a matter of federal law.

Nonetheless, Illinois does offer a back-door argument of its own. It contends that §3803(c) preempts regulation of "alternative mortgage transactions" but not particular *terms* of those transactions. Let us return to the balloon-payment example. Illinois contends that a balloon payment is not itself an "alternative mortgage transaction," so that it may regulate lenders' use of balloon payments *in* alternative mortgage transactions even if §3803(c) survives the 1994 Act (as we have held that it does). The premise of this argument is doubtful; §3802(1) defines an alternative mort-

gage transaction as a variable-interest (or equity-sharing) home equity loan, and §3802(1)(B) specifies that a balloon payment *makes* an interest rate variable (by precipitating refinancing at the latest market rate) even if the rate nominally is fixed. So a balloon payment in a home mortgage loan is one feature that by definition identifies the loan as an "alternative mortgage transaction." Let this pass. The deeper point is that §3803(c) does not depend on the means a state chooses. The statutory question is whether a loan is an alternative mortgage transaction, not whether a particular term in the loan documents is itself an alternative mortgage transaction. *If* a given transaction is an "alternative mortgage transaction"—that is, if it is a variable-rate home equity loan that a federal lender could make under OTS regulations—then *all* state rules regulating that loan are preempted to the extent required for parity. If a state could say "we're regulating the terms but not the transaction" then the 1982 Act would have been a dead letter from the moment the President signed the legislation, for its only objective is to permit state lenders to offer terms from the palette of federal lenders.

Thus we hold that the new state regulations are preempted under §3803(c) to the extent that they block state lenders from extending credit on terms open under federal regulations, when the lenders actually comply with the federal regulations. (As the fourth circuit observed in *Face*, 239 F.3d at 635-36, 640, states retain full regulatory authority with respect to lenders that do not comply with federal rules.) It remains to be determined which, if any, of the state regulations has a prohibited effect. The answer depends not only on the provisions of the federal regulations but also on the way in which these regulations work. At one time the OTS believed that state lenders always could use whatever terms were lawful for federal lenders. More recently, however, the OTS has taken the position that only federal regulations accompanied by a declaration of

preemptive force affect state law. See 67 Fed. Reg. at 60548 n.36. On this view states may put off limits to state-chartered lenders some of the terms that are lawful for federal lenders. The district court must determine which of these views is legally correct and then ascertain which provisions of the state regulations are incompatible with the federal regulations now in force. It would be premature for us to address these subjects, on which we have not had the benefit of adversarial presentation. Accordingly, the judgment of the district court is vacated, and the case is remanded with instructions to dismiss the Office of Banks and Real Estate as a party and to issue a declaratory judgment resolving which state regulations are preempted by the combination of §3803(c) and the OTS regulations governing federal lenders.

A true Copy:

     Teste:

                        _____

                        ***Clerk of the United States Court of Appeals for the Seventh Circuit***