FIFTH DIVISION

MARCH 31, 2004

Nos. 1-01-2535, 1-01-2536, 1-01-2538,              1-01-2541, 1-01-2545, 1-01-2546,             1-01-2813, 1-01-2814 and 1-01-2815

(Consolidated)

IN THE 

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

U.S. BANK NATIONAL ASSOCIATION, ) Appeal from the

) Circuit Court of

          Plaintiff-Appellee, ) Cook County.

)

) 

)

MICHAEL CLARK and BETTY CLARK, ) No. 00 CH 419

           )

          Defendants-Appellants. ) 

________________________________________________)

EASTERN SAVINGS BANK, FSB, )

           )

          Plaintiff-Appellee, )

)

) No. 99 CH 17918

)

IRIS PETERS, )

)

          Defendant-Appellant. )

________________________________________________)

EQUICREDIT CORPORATION OF AMERICA, )

)

          Plaintiff-Appellee, )

)

) No. 99 CH 15713

)

GOLDIE JOHNSON, )

)

          Defendant-Appellant. )

________________________________________________)

AAMES FUNDING CORPORATION, d/b/a AAMES )

HOME LOAN, )

) 

          Plaintiff-Appellee, )

)

          v. ) No. 99 CH 12637

)

JOHN D. PALUCH, )

)

          Defendant-Appellant. )

________________________________________________)

BANK ONE, N.A., as Trustee, ) 

)

          Plaintiff-Appellee, )

)

) No. 00 CH 12763

)

COLUMBUS CAMPBELL, VILLAGE OF ROBBINS, )

and UNKNOWN OWNERS, )

)

Defendants and Third Party )

Plaintiffs-Appellants. )

________________________________________________)

BANKER'S TRUST COMPANY, )

)

Plaintiff-Appellee, )

)

) No. 00 CH 12720

)

ELOISE KING, R.V. KING, MERCURY FINANCE )

COMPANY OF ILLINOIS, JIM McCRORY, as Trustee )

or successor Trustee, FIDELITY FINANCIAL )

SERVICES, INC., ELOISE KING, Heir, WANDA )

GOSA, Heir, FELICIA KING, Heir, SABRINA KING, )

a/k/a/ SURBRINA KING, Heir, UNKNOWN HEIRS )

AND LEGATEES OF ELOISE KING, IF ANY, )

UNKNOWN TENANTS, UNKNOWN OWNERS )

and NON-RECORD CLAIMANTS, )

)

Defendants-Appellants. )

________________________________________________)

BANK OF NEW YORK, as Trustee of Amresco )

Residential Securities Corporation Mortgage Loan )

Trust 1997-3 Under the Polling & Servicing Agreement )

Dated as of September 1, 1997, )

)

Plaintiff-Appellee, )

)

v. ) No. 98 CH 8721

)

LINDA HEATH, )

)

Defendant and Counterplaintiff- )

Appellant, )

) 

BANK OF NEW YORK as Trustee of Amresco )

Residential Securities Corporation Mortgage Loan )

Trust 1997-3 Under the Polling & Servicing Agreement )

Dated as of September 1, 1997, )

)

Counterdefendant-Appellee, )

________________________________________________)

BANKERS TRUST COMPANY, as Trustee of Amresco )

Residential Securities Corporation Mortgage Loan )

Trust 1996-5 Under the Pooling & Servicing Agreement )

Dated as of December 1, 1996, )

)

Plaintiff-Appellee, )

)

) No. 97 CH 12802

)

FRANCES N. COLEMAN, a/k/a FRANCES N. )

DIXON, THE CITY OF CHICAGO, UNKNOWN )

OWNERS and NON-RECORD CLAIMANTS, )

)

Defendants and Counterplaintiffs- )

Appellants, )

)

) 

)

BANKERS TRUST COMPANY, as Trustee of Amresco )

Residential Securities Corporation Mortgage Loan Trust )

1996-5 Under the Pooling & Servicing Agreement )

Dated as of December 1, 1996, )

)

Counterdefendant-Appellee. )

________________________________________________)

IMC MORTGAGE COMPANY, )

)

Plaintiff-Appellee, )

)

) No. 99 CH 7566

)

PAMELA CUSHMAN, NON-RECORD CLAIMANTS, )

UNKNOWN TENANTS and UNKNOWN OWNERS, )

) 

Defendants and Counterplaintiffs- )

Appellants, )

)

)

)

IMC MORTGAGE COMPANY, ) Honorable

) Richard Siebel,

Counterdefendant-Appellee. ) Judge Presiding.

______________________________________________________________________________

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

In these nine consolidated cases, defendants appeal from orders of the circuit court of Cook County dismissing their counterclaims and affirmative defenses in foreclosure actions brought by the plaintiff creditors.  The defendants alleged that the creditors violated the Illinois Interest Act by imposing fees in excess of 3% on loans with an interest rate in excess of 8%.  815 ILCS 205/4.1a(f) (West 2000).  The creditors filed motions to dismiss pursuant to sections 2--615 and 2--619 of the Illinois Code of Civil Procedure.  735 ILCS 5/2--615, 2--619 (West 2000).  On May 16, 2001, the trial court issued a memorandum opinion holding that the defendants' counterclaims and affirmative defenses under the Interest Act were preempted by the federal Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDMCA) and, in certain cases, the federal Alternative Mortgage Transaction Parity Act of 1982 (Parity Act).  12 U.S.C. §1735 
et seq.
 (2000); 12 U.S.C. §3801 
et seq.
 (2000).  Three defendants also seek to appeal an February 2, 2001, order denying their motions to file class countercomplaints alleging violations of the Interest Act and various other consumer protection statutes.

I

Initially, this court addresses the standards of review.  The debtors appeal dismissals entered pursuant to sections 2--615 and 2--619 of the Code.  A section 2--615 motion admits all well-pleaded facts and attacks the legal sufficiency of the complaint; a section 2--619 motion admits the legal sufficiency of the complaint, but raises defects, defenses or other affirmative matter that defeat the action.  
Joseph v. Chicago Transit Authority
, 306 Ill. App. 3d 927, 930, 715 N.E.2d 733, 736 (1999).  
The preemption of Illinois law by a federal statute is generally considered "affirmative matter" properly raised under section 2--619, not section 2--615.  
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 487
, 639 N.E.2d 1282, 1290-91 (1994)
.  
However, as the trial court noted in its opinion, where the affirmative matter is apparent on the face of the pleading, a motion to dismiss may fall within an area of confluence between section 2--615 and section 2-619(a)(9).  
Nickum
, 159 Ill. 2d at 486
, 639 N.E.2d at 1290
.  Accordingly, this court will not penalize those creditors that filed motions pursuant to section 2--615.
  Dismissals under either section are reviewed 
de novo
.  
R-Five, Inc. v. Shadeco, Inc.
, 305 Ill. App. 3d 635, 639, 712 N.E.2d 913, 915 (1999).

II

The supremacy clause of the United States Constitution states that "the Laws of the United States *** shall be the supreme Law of the Land; *** any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const., art. VI, cl. 2. Congress' purpose "'is the ultimate touchstone' of pre-emption analysis."  
Cipollone v. Liggett Group, Inc.
, 505 U.S. 504, 516, 120 L. Ed. 2d 407, 422, 112 S. Ct. 2608, 2617 (1992), quoting 
Malone v. White Motor Corp.
, 435 U.S. 497, 504, 55 L. Ed. 2d 443, 450, 98 S. Ct. 1185, 1190 (1978).  "Congress' intent to preempt State law may be manifested 'by express provision, by implication, or by a conflict between federal and state law.'"  
Busch v. Graphic Color Corp.
, 169 Ill. 2d 325, 335, 662 N.E.2d 397 (1996), quoting 
New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.
, 514 U.S. 645, 654, 131 L. Ed. 2d 695, 704, 115 S. Ct. 1671, 1676 (1995).  The creditors argue that the homeowners' counterclaims and affirmative defenses under the Interest Act were preempted by the DIDMCA and the Alternative Mortgage Transaction Parity Act of 1982 (Parity Act).  This court will address each statute in turn.

A

First, we address whether section 4.1a of the Interest Act is preempted by section 501 of the DIDMCA.  Section 4.1a of the Interest Act provides in part as follows:

"Where there is a charge in addition to the stated rate of interest payable directly or indirectly by the borrower and imposed directly or indirectly by the lender as a consideration for the loan, or for or in connection with the loan of money, whether paid or payable by the borrower, the seller, or any other person on behalf of the borrower to the lender or to a third party, or for or in connection with the loan of money, other than as hereinabove in this Section provided, whether denominated 'points,' 'service charge,' 'discount,' 'commission,' or otherwise, and without regard to declining balances of principal which would result from any required or optional amortization of the principal of the loan, the rate of interest shall be calculated in the following manner:

The percentage of the principal amount of the loan represented by all of such charges shall first be computed, which in the case of a loan with an interest rate in excess of 8% per annum secured by residential real estate, other than loans described in paragraphs (e) and (f) of Section 4, shall not exceed 3% of such principal amount."  815 ILCS 205/4.1a(f) (West 2000).

Section 501(a) of the DIDMCA provides in relevant part as follows:

"(1) The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is--

(A) secured by a first lien on residential real property, by a first lien on all stock allocated to a dwelling unit in a residential cooperative housing corporation, or by a first lien on a residential manufactured home ***; 

(B) made after March 31, 1980; and 

(C) described in section 527(b) of the National Housing Act ***."  12 U.S.C. §1735f – 7a(a)(1) (2000).

In these cases, the parties stipulated that the loans at issue:  (1) were made after March 1, 1980; (2) satisfy the terms of section 527(b) of the National Housing Act; and (3) are not purchase-money first liens on defendants' residential real estate.

In 
Fidelity Financial Services, Inc. v. Hicks
, 214 Ill. App. 3d 398, 405-06, 
574 N.E.2d 15, 20-21
 (1991)
, this court considered this very issue, concluding that the loan at issue was not within the scope of DIDMCA because it was unclear that the trust deed securing the loan was a "first lien" and that the "first lien on residential real property
" language in section 501 of the DIDMCA applied only to purchase-money mortgages.
  In addition, the 
Hicks
 court held that when section 4 of the Interest Act, which permits any rate or amount of interest or compensation with respect to loans secured by a mortgage on real estate, was enacted in 1979, the three-point limit found in section 4.1a was 
not
 implicitly repealed.  
Hicks
, 214 Ill. App. 3d at 401-04, 
574 N.E.2d
 at 18-19.  In so holding, this court declined to follow the alternative analysis found in 
dicta
 in 
Currie v. Diamond Mortgage Corp. of Illinois
, 859 F. 2d 1538, 1542 (7th Cir. 1988).
  
Hicks
, 214 Ill. App. 3d at 401-02, 
574 N.E.2d
 at 18.  
The 
Hicks
 court noted that 
Currie
 held that section 4.1a was preempted by section 501 of the DIDMCA
  
Hicks
, 214 Ill. App. 3d at 402, 
574 N.E.2d
 at 18.

In these cases, the debtors rely on 
Hicks
 to argue that section 4.1a of the Interest Act was 
not
 preempted because their loans are not purchase-money mortgages
.  The creditors argue that the discussion of preemption in 
Hicks
 was 
dicta
.  The creditors seek to rely on federal case law holding that the Interest Act is preempted by section 501 of the DIDMCA
.  See 
Currie
, 859 F.2d at 1542; 
In re Smith
, 280 B.R. 436, 443-34 (Bankr. N.D. Ill. 2002).  Indeed, the creditors cited several unpublished decisions of the federal district court for the Northern District of Illinois.  See 
Smith v. First Union National Bank
, No. 01 C 1719 (N.D. Ill. April 24, 2002); 
Reed v. World Wide Financial Services, Inc.
, No. 98 C 4294 (N.D. Ill. November 27, 1998); 
Gora v. Banc One Financial Services, Inc.
, No. 95 C 2542 (N.D. Ill. 
October 17, 1995).  The creditors also relied on an opinion letter issued by this state's Attorney General in 1996.  1996 Ill. Atty. Gen. Op. No. 96--37.  In addition, the creditors submitted a 1998 interpretive letter issued by the state Office of Banks and Real Estate supporting preemption.  The trial court agreed with the creditors on this point and relied on these authorities.
(footnote: 1)
 However, neither the trial court nor this court is required to rely on the authorities cited above.  We accord considerable deference to a federal agency's interpretation of a federal statute, provided that its interpretation is reasonable and Congress has not expressed a contrary intent.  
Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.
, 186 Ill. 2d 472, 483
, 713 N.E.2d 543, 548 (1999).
  Uniformity of decision is an important consideration in interpreting federal statutes such that an Illinois court may elect to give "considerable weight" to lower federal court opinions
 interpreting a federal statute
, but those decisions are 
not controlling on an Illinois court.  
Sprietsma v. Mercury Marine
, 197 Ill. 2d 112, 120, 757 N.E.2d 75, 80 (2001), 
rev'd on other grounds
, 537 U.S. 51, 154 L. Ed. 2d 466, 123 S. Ct. 518 (2002).
  However, an unpublished federal decision is not precedential in federal courts, let alone Illinois courts.  See  
Illinois State Toll Highway Authority v. Amoco Oil Co.
, 336 Ill. App. 3d 300, 317
, 783 N.E.2d 658, 672 (2003)
.  
Similarly, 
private letter rulings issued by an administrative agency generally have no precedential effect.  See 
Union Electric Co. v. Department of Revenue
, 136 Ill. 2d 385, 400
, 556 N.E.2d 236, 243 (1990)
.  An opinion of the Attorney General is to be given considerable weight, especially on matters of first impression, but is not binding on the courts
.  
Bonaguro v. County Officers Electoral Board
, 158 Ill. 2d 391, 399, 634 N.E.2d 712, 715 (1994).

On the other hand, it is the absolute duty of the circuit court to follow the decisions of the appellate court. 
 If a circuit court genuinely doubts the vitality of a reviewing court decision, the proper manner in which to proceed in a complex or protracted case is to rule in accord with the existing law and to enter a Rule 304(a) (155 Ill. 2d R. 304(a)) finding or certify the question for interlocutory appeal under Rule 308 (155 Ill. 2d R. 308). 
 
In re R.C.
, 195 Ill. 2d 291, 297-298
, 745 N.E.2d 1233, 1238 (2001).
  A trial court cannot simply dismiss a ruling of this court on the ground that it is 
dicta
.
(footnote: 2)  Our supreme court has stated as follows:

"
Dicta
 normally comes in two varieties: 
obiter dicta
 and judicial 
dicta
.  
Obiter dicta
 are comments in a judicial opinion that are unnecessary to the disposition of the case.  Black's Law Dictionary 1100 (7th ed. 1999).  Judicial 
dicta
 are comments in a judicial opinion that are unnecessary to the disposition of the case, but involve an issue briefed and argued by the parties.  Black's Law Dictionary 465 (7th ed. 1999).  Judicial 
dicta
 have the force of a determination by a reviewing court and should receive dispositive weight in an inferior court."  
People v. Williams
, 204 Ill. 2d 191, 206,
 788 N.E.2d 1126, 1136 
(2003).

Thus, to depart from a decision of this court, the trial court would have to conclude not only that the analysis was 
dicta
, but also that it was not judicial 
dicta
.
  A trial court cannot ignore an analysis of this court that has dispositive weight in favor of other authorities of lesser weight.

In 
Hicks
, this court addressed the preemption issue, despite the fact that the plaintiff creditor there had not raised the issue on appeal, because the creditor 
had
 briefed and argued the issue in the trial court and this court had reversed the dismissal in all other respects.  The creditor argued in the alternative that the preemption issue would remain as an issue of fact on remand.  
Hicks
, 214 Ill. App. 3d at 405, 
574 N.E.2d at 20.  
In granting an appeal of a certified question under Rule 308, this court is required to consider whether the appeal will materially advance the termination of the litigation. 155 Ill. 2d R. 308
(a).  Moreover, 
it is well-established that this court should affirm a correct dismissal for any reason appearing in the record.  
E.g.
, 
Nielsen-Massey Vanillas, Inc. v. City of Waukegan
, 276 Ill. App. 3d 146, 151, 657 N.E.2d 1201, 1205 (1995).
  The preemption issue went directly to the applicability of section 4.1a of the Interest Act; avoiding the issue would not have materially advanced the termination of the litigation.  
Thus, our 
analysis was necessary to the proper disposition of the case.
  Accordingly, we conclude that the discussion of preemption in 
Hicks
 is judicial 
dicta
 
that should have received dispositive weight in the circuit court.

The creditors argue in the alternative that 
Hicks
 was incorrectly decided.
  For the reasons that follow, we conclude that we need not reach that question, as circumstances have changed following 
Hicks
.

Section 501(a) of the DIDMCA does not operate without exception.
  For example, section 501(b)(2) of the
 DIDMCA provided that if, between April 1, 1980, and April 1, 1983, a state declined to have federal preemptions apply, the state usury laws would become effective. 12 U.S.C. §1735f – 7a(b)(2) (2000).  The defendants do not claim that Illinois exercised this option.  Rather, the defendants claim that section 4.1a of the Interest Act
 falls within section 501(b)(4) of the DIDMCA, which provides that
:

"At any time after [the date of enactment of this Act 
i.e.
,] March 31, 1980, any State may adopt a provision of law placing limitations on discount points or such other charges on any loan, mortgage, credit sale, or advance described in subsection [501](a)(1) ***."  12 U.S.C. §1735f – 7a(b)(4) (2000).

Defendants note that, after 
Hicks
 was decided (and after March 31, 1980), the General Assembly passed and the Governor signed Public Act 87-496, which passed an amended version of 
section 4.1a of the Interest Act.  Pub. Act 87-496 (eff. January 1, 1992).  Thus, defendants contend that section 4.1a(f)
 is not preempted.

Plaintiffs respond that the amendment to 
section 4.1a(f) of the Interest Act did not change the 
limitations on imposing fees in excess of 3% on loans with an interest rate in excess of 8%.  Thus, plaintiffs argue that 
where an amendatory statute is enacted which reenacts some of the provisions of the former statute, such portions of the old statute as are repeated or retained, either literally or substantially, are to be regarded as a continuation of the old statute and not as the enactment of a new statute on the subject or as the repeal of the former statute.  
Village of Park Forest v. Wojciechowski
, 29 Ill. 2d 435, 438
, 194 N.E.2d 346, 348 (1963)
; 
City of Chicago v. Gordon
, 146 Ill. App. 3d 898, 901, 497 N.E.2d 442, 445 (1986).  The trial court agreed with plaintiffs on this point.

Wojciechowski
 and 
Gordon
 are clearly distinguishable, as neither case involved the situation where, as here, Congress passed an allegedly preemptive statute between the initial enactment and the reenactment of the Illinois statute.  The parties have cited no Illinois case addressing the precise situation presented here.  

The debtors cite 
Davis v. City of Chicago
, 59 Ill. 2d 439, 
322 N.E.2d 29 (1974)
, as relevant to the issue on appeal here.  
Davis
 involved 
personal injury suits filed by minors against the City of Chicago in which the Department of Public Aid intervened pursuant to section 11--22 of the Public Aid Code (Ill. Rev. Stat. 1967, ch. 23, par. 11–22) to assert against any recovery by the plaintiffs a lien for medical treatment rendered and paid for by the Department.  
Davis
, 59 Ill. 2d at 440-41
, 322 N.E.2d at 30
.

At the time the minors filed their complaints, section 11 -- 22 of the Public Aid Code provided that:

"The Illinois Department shall have a charge upon all claims, demands and causes of action for injuries to an applicant for or recipient of financial aid under Articles III, IV and V for the total amount of medical assistance provided the recipient from the time of injury to the date of recovery upon such claim, demand or cause of action ***.

* * *

On petition filed by the Illinois Department, or by the local governmental unit or county if either is claiming a charge, or by the recipient, or by the defendant, the court, on written notice to all interested parties, may adjudicate the rights of the parties and enforce the charge.  The court may approve the settlement of any claim, demand or cause of action either before or after a verdict, and nothing in this Section shall be construed as requiring the actual trial or final adjudication of any claim, demand or cause of action upon which the Illinois Department, the local governmental unit or county has charge.  The court may determine what portion of the recovery shall be paid to the injured person and what portion shall be paid to the Illinois Department, the local governmental unit or county having a charge against the recovery."  Ill. Rev. Stat. 1967, ch. 23, par. 11--22.

At the same time, section 23 of article IV of the 1870 Constitution provided:

"The General Assembly shall have no power to release or extinguish, in whole or in part, the indebtedness, liability, or obligation of any corporation or individual to this state or to any municipal corporation therein."  Ill. Const. 1870, art. IV, §23.

However, the claims in 
Davis
 were settled after the effective date of the Constitution of 1970, which contained no prohibition similar to section 23.  
Davis
, 59 Ill. 2d at 442
, 322 N.E.2d at 31.  In considering the constitutionality of the statute, our supreme court stated that:

"Section 11--22 was reenacted by the legislature and approved on August 23, 1973. It became effective on October 1, 1973.  The only change made was the addition of a provision authorizing the service of notice of the State's claim by certified mail in addition to registered mail.  We are aware of the statutory provision that any statute which is the same as a prior statute shall be construed as a continuation of such prior provision and not as a new enactment.  (Ill. Rev. Stat. 1973, ch. 131, par. 2.)  
In this case, however, we have an unusual situation involving a statute that may have been subject to successful constitutional challenge under the former constitution but has now been reenacted under the 1970 Constitution in which the provisions of the 1870 Constitution giving rise to the challenge do not appear.  We also note that section 11--22 was reenacted after the opinions in 
Davis v. City of Chicago
, 13 Ill. App. 3d 160, 
Madison v. Rueben
, 10 Ill. App. 3d 16, and 
Bender v. City of Chicago
, 8 Ill. App. 3d 267, all of which raised questions as to the validity of section 11--22 with differing results.  Under these circumstances it may be fairly said that the intent of the legislature, and its principal purpose, in reenacting section 11--22 with only a minor change was to dispel the questions as to its validity."  
Davis v. Chicago
, 59 Ill. 2d 439, 444
, 322 N.E.2d 29, 32 (1974).

The creditors correctly note that the consolidated appeals here do not involve the exact circumstances present in 
Davis
.  Nevertheless, the 
Davis
 court's reasoning is instructive.  Our supreme court departed from the rule 
that in reenacting a statute, any language that is the same as in the prior statute shall be construed as a continuation of such prior provision, not as a new enactment.
  The 
Davis
 court departed from that rule because the case law raised questions as to the validity of the statute under a superior law, 
i.e.
, the Illinois Constitution of 1870.  The 
Davis
 court ruled that the reenactment of the statute years after the adoption of the Illinois Constitution of 1970 showed a legislative intent to resolve questions of the statute's validity.  The 
Davis
 court did so even though it could have concluded that the legislature meant only to 
add the provision authorizing the service of notice of the State's claim by certified mail.

In this case, 
Currie
 and 
Hicks
 raised questions as to whether the three-point limit in section 4.1a of the Interest Act had been implicitly repealed by the adoption of section 4 of the Interest Act, and if not, whether 
section 4.1a of the Interest Act was preempted by a superior law, 
i.e.
, section 501 of the DIDMCA
.  As in 
Davis
, the reenactment at issue here did not change the statutory language at the heart of the dispute
.  Unlike 
Davis
, the relevant text of the superior law did not change.  However, the superior law here specifically allows states to override the federal law and adopt limits on discount points.  Thus, following the reasoning in 
Davis
, the reenactment of section 4.1a may be fairly be said to show a legislative intent to dispel the questions raised by the tensions between 
Currie
 and 
Hicks
.

The question remains as to whether the reenactment of section 4.1a actually satisfies the override provision found in section 501(b)(4) of the DIDMCA  Again, the parties found no case law directly on point.  However, the United States Court of Appeals for the Eleventh Circuit, when faced with a similar situation, held that, 
in the absence of a contrary statement,
 
when a state reenacts or raises its usury limit on a particular class of loans, it overrides the Federal Housing Authority (FHA) and Veterans Administration (VA) preemptions 
of state usury laws for certain 
FHA- and VA-insured mobile home agreements
 found in section 308 of the Housing and Community Development Amendments of 1979 (see 12 U.S.C. §1735f-7 (2000))
(footnote: 3) and section 401 of the Veterans' Disability Compensation and Survivors' Benefits Amendments of 1979 (see 38 U.S.C. §3728 (2000)).  
Doyle v. Southern Guaranty Corp.
, 795 F.2d 907, 914 (11th Cir. 1986)
.  

The creditors respond that the 
Doyle
 court specifically noted that, "[u]nlike the FHA preemption, the DIDMCA preemption is clear in mandating specific language in the state override provision."  
Doyle
, 795 F.2d at 913.  However, this statement in 
Doyle
 is immediately followed by a footnote citing 
section 501(b)(2) of the
 DIDMCA
, not section 501(b)(4).  
Doyle
, 795 F.2d at 913 n.15.  The 
Doyle
 court then stated that "
Congress knew the type of language to use when it intended that state override provisions make specific reference to the federal preemption."  
Doyle
, 795 F.2d at 913.  The difference between 
section 501(b)(2)
 and section 501(b)(4) 
of the
 DIDMCA
 similarly demonstrates that Congress did not require specific language in a state law to override the federal preemption under the latter section.
(footnote: 4)
 Doyle
 is consistent not only with the reasoning of 
Davis
, but also with the rule of statutory construction that, if the legislature amends a statute after the courts have interpreted a prior version of that statute, the legislature is presumed to have been aware of the judicial decisions and to have acted with that knowledge.  
Clark v. Han
, 272 Ill. App. 3d 981, 989, 651 N.E.2d 549, 554 (1995), citing 
People v. Hickman
, 163 Ill. 2d 250, 262, 644 N.E.2d 1147, 1153 (1994).  In this case, our General Assembly passed amendments to section 4.1a of the Interest Act on June 26, 1991, after 
Currie
 and 
Hicks
 were decided.  The General Assembly, which is presumed to have been aware of these cases (and the tension between them), did not amend or strike language in section 4.1a to conform it to either 
Currie
 or 
Hicks
 on the issue of preemption.  Instead, the legislature reenacted the broad pre-DIDMCA language regarding the calculation of fees for loans with an interest rate exceeding eight percent.  When a state reenacts a usury limitation, it is unlikely that it will do so in ignorance of the federal preemptions or of market forces.  
Doyle
, 795 F.2d at 914.
(footnote: 5)
 The creditors argue that the legislative history of the DIDMCA, particularly a statement by Senator Proxmire introducing the amendment that became section 501(b)(4), shows that a state must adopt 
new
 legislation to override the DIDMCA.  See 125 Cong. Rec. 30,659 (1979).  As the creditors' brief elsewhere acknowledges, in any case of federal statutory construction, the analysis begins with the language of the statute; where that language provides a clear answer, it ends there as well.  
E.g.
, 
Hughes Aircraft Co. v. Jacobson
, 525 U.S. 432, 438, 142 L. Ed. 2d 881, 891-92, 119 S. Ct. 755, 760 (1999).  "If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent."  
Lamie v. United States

Trustee
, ___ U.S. ___, ___, 124 S. Ct. 1023, 1034, ___ L. Ed. 2d ___, ___ (2004).

In this case, the plain language of section 501(b)(4) provides that "any State may adopt a provision of law placing limitations on discount points."  12 U.S.C. §1735f – 7a(b)(4) (2000).  There is nothing in this language that requires that the provision of law adopted be "new," either in the sense of being different from a state's prior limitation on discount points (or lack thereof) or in the sense of occupying a different or new section of a state's constitution or statutory code.  To the contrary, the breadth of the override provision in section 501(b)(4) reflects the express recognition of Congress in section 501(a) that usury limitations in state law may be found in state constitutions as well as state statutes.  Congress thus recognized that a state law may be adopted by a variety of methods.  There is no reason to base the interpretation of a federal statute on a single word found in the legislative history that did not find its way into the legislation itself.  See, 
e.g.
, 
City of Chicago v. Environmental Defense Fund
, 511 U.S. 328, 337, 128 L. Ed. 2d 302, 311, 114 S. Ct. 1588, 1593 (1994).

The creditors rely on a footnote in a federal case stating that 
"Illinois has not exercised its right to invoke its own usury statute, even though it effectively amended portions of Section 4.1a in 1992."  
Smith
, 280 B.R. at 443 n.5.  The bankruptcy court did not explain what it meant by "invoking" the usury statute or where that concept may be divined in the plain text of the DIDMCA.  Nor did the bankruptcy court discuss 
Doyle
 on this point; indeed, it may be that the parties in 
Smith
 did not cite 
Doyle
.  Perhaps more significantly, the creditors fail to note that in 
Smith
,
 the court ultimately ruled that 
the debtor would have a chance at trial to show that DIDCMA did not apply to her case.  
Smith
, 280 B.R.
 at 444.  Accordingly, this court is not persuaded it should follow 
In re Smith
.

The creditors further rely on the 
unpublished federal district court
 decisions it cited in arguing that the discussion of preemption in 
Hicks
 was irrelevant 
dicta
.  As noted above, such decisions are not precedential.  Similarly, the opinion of our Attorney General, which chose to rely on those 
unpublished federal district court
 decisions
, disregard 
Hicks
 and not mention or address the effect of Public Act 87-496, is not binding on this court and is equally unpersuasive on this point.
(footnote: 6)
 In sum, the trial court erred in disregarding 
Hicks
.  Moreover, regardless of whether 
Hicks
 was correctly decided, the trial court erred in dismissing the debtors' defenses and counterclaims as preempted by the DIDMCA, as the reenactment of section 4.1a of the Interest Act overrode the federal law.

B

The creditors also contend that the debtors' claims in six of the consolidated appeals are preempted by the Parity Act, which governs "alternative mortgage transactions," including adjustable rate loans.  See 12 U.S.C. §3802(1)(A) (2000).
  Initially, we note that the trial court's memorandum opinion refers to this argument in passing, but does not state that the defenses and counterclaims at issue are preempted by the Parity Act.  Nevertheless, as this court may affirm for any reason appearing in the record and briefed and argued by the parties in the trial court, this court will consider the issue.

The Parity Act provides in part as follows:

"
(a) General authority; compliance by banks, credit unions and all other housing creditors with applicable regulations.  

In order to prevent discrimination against State-chartered depository institutions, and other nonfederally chartered housing creditors, with respect to making, purchasing, and enforcing alternative mortgage transactions, housing creditors may make, purchase, and enforce alternative mortgage transactions, except that this section shall apply-- 

(1) with respect to banks, only to transactions made in accordance with regulations governing alternative mortgage transactions as issued by the Comptroller of the Currency for national banks, to the extent that such regulations are authorized by rulemaking authority granted to the Comptroller of the Currency with regard to national banks under laws other than this section;

(2) with respect to credit unions, only to trans­actions made in accordance with regulations governing alternative mortgage transactions as issued by the National Credit Union Administration Board for Federal credit unions, to the extent that such regualtions are authorized by rulemaking authority granted to the National Credit Union Administration with regard to Federal credit unions under laws other than this section; and 

(3) with respect to all other housing creditors, including without limitation, savings and loan associations, mutual savings banks, and savings banks, only to trans­actions made in accordance with regulations governing alternative mortgage transactions as issued by the Director of the Office of Thrift Supervision for federally chartered savings and loan associations, to the extent that such regulations are authorized by rulemaking authority granted to the Director of the Office of Thrift Supervision with regard to federally chartered savings and loan associations under laws other than this section.

* * *

(c) Preemption of State constitutions, laws or regulations.  An alternative mortgage transaction may be made by a housing creditor in accordance with this section, notwithstanding any State constitution, law, or regulation."  12 U.S.C. §3803(a), (c) (2000).

The creditors assert that in these appeals, the relevant official is the Director of the Office of Thrift Supervision (OTS)
.

The parties disagree as to the scope of preemption under section 3803.  The debtors maintain that preemption under section 3803(c) occurs only to transactions made in accordance with regulations governing alternative mortgage transactions as issued by
 the appropriate federal official or agency.  The creditors maintain that the debtors are reaching this position through a "strained construction of the OTS Parity Act regulation," which at the relevant time provided as follows:

"Pursuant to 12 U.S.C. 3803, housing creditors that are not commercial banks, credit unions, or Federal savings associations may make alternative mortgage transactions as defined by that section and further defined and described by applicable regulations identified in this section, notwithstanding any state constitution, law, or regulation.  In accordance with section 807(b) of Public Law 97-320, 12 U.S.C. 3801 note, §§ 560.33, 560.34, 560.35, and 560.210 of this part are identified as appropriate and applicable to the exercise of this authority and all regulations not so identified are deemed inappropriate and inapplicable.  Housing creditors engaged in credit sales should read the term 'loan' as 'credit sale' wherever applicable."  12 C.F.R. 560.220 (2000).

The regulations identified in section 560.220 address 
only four aspects of mortgage financing: late charges; prepayments; adjustments to home loans; and disclosures for variable rate transactions. 12 C.F.R. §§560.33 through 560.35, 560.210 (2000).

Nevertheless, the creditors maintain that this plain reading of the 
regulation must be wrong.  The creditors argue that the supposed fallacy in this reading is demonstrated by the example of a fixed-rate balloon loan, which the creditors state is specifically identified in the Parity Act.  Although the creditors do not cite
 
Illinois Ass'n of Mortgage Brokers v. Office of Banks & Real Estate
, 308 F.3d 762, 767 (7th Cir. 2002), the balloon loan example was considered therein.  The Seventh Circuit reasoned that 
"
if it is a variable-rate home equity loan that a federal lender could make under OTS regulations--then 
all
 state rules regulating that loan are preempted to the extent required for parity." (Emphasis in original.)  
Illinois Ass'n of Mortgage Brokers
, 308 F.
3d at 767-68.  
The Seventh Circuit
 held that state regulations are preempted "to the extent that they block state lenders from extending credit on terms open under federal regulations, when the lenders actually comply with the federal regulations."  
Illinois Ass'n of Mortgage Brokers
, 308 F.
3d at 768.  However, the Seventh Circuit
 then remanded the case for further consideration because:

"
It remains to be determined which, if any, of the state regulations has a prohibited effect. The answer depends not only on the provisions of the federal regulations but also on the way in which these regulations work."  
Illinois Ass'n of Mortgage Brokers
, 308 F.
3d at 768.  

Thus, the Seventh Circuit declined to resolve the question of the preemptive scope of the Parity Act as a matter of law.  
Illinois Ass'n of Mortgage Brokers
, 308 F.
3d at 768.  
Consequently, it is not the sort of decision to which this court would give considerable weight in determining this issue.

The debtors' reading of the plain language of the regulation is completely consistent with the federal case law the creditors did cite, each of which involved the regulations identified in section 560.220.
  
National Home Equity Mortgage Ass'n v. Face
, 239 F.3d 633 (4th Cir. 2001), 
cert. denied
, 534 U.S. 823, 151 L. Ed. 2d 26, 122 S. Ct. 58 (2001) (prepayment charges); 
Davis v. GN Mortgage Corp.
, 244 F. Supp. 2d 950, 959 (N.D. Ill. 2003)
 (prepayment charges and disclosures); 
Shinn v. Encore Mortgage Services, Inc.
, 96 F. Supp. 2d 419 (D.N.J. 2000) (prepayment charges).
  Moreover, after analyzing 
Face
 and 
Shinn
, among other authorities, the United States Court of Appeals for the Ninth Circuit held that 
the Parity Act did 
not
 preempt all state laws relating to alternative mortgage transactions.  
Ansley v. Ameriquest Mortgage Co.
, 340 F.3d 858, 864 (9th Cir. 2003).  Following the rules outlined above, this court gives considerable weight
 
to 
Ansley
, given the importance of maintaining uniformity of decision in interpreting federal statutes.

This court also gives weight to the implementation and historical interpretation of the Parity Act by the OTS.  In a recent rulemaking proceeding, the OTS stated as follows:

"Several commenters argued that if [the Parity Act] is to be given its proper effect, state housing creditors should be governed by the same regulations that address alternative mortgage trans­actions by federal savings associations.  According to commenters, these rules include §560.2(a), which states OTS's intent to occupy the entire field of lending regulation for federal savings associations in preemption of state law, and §560.2(b), which expressly preempts state laws that address such matters as private mortgage insurance requirements, loan-to-value ratios, terms of credit, loan-related fees (including late charges and prepayment penalties), access to credit reports, disclosures, and advertising laws.

OTS has 
never
 identified its preemption rules as applicable to state housing creditors under [the Parity Act] 
***." (Emphasis added.)  67 Fed. Reg. 60542, 60544 (September 26, 2002).

This statement lends support to the conclusion that OTS has not otherwise issued the kind of blanket preemption of state regulation of loan-related fees that the creditors in the cases here believe exists.

In this case, the creditors have failed to show that the 
3% fee limit on loans with an interest rate in excess of 8% attempts to regulate either the elements of the loans which purportedly make them alternative mortgage trans
actions or the terms of such loans identified in section 560.220 of the OTS regulations.  
Thus, the creditors have failed to show that the debtors' defenses and counterclaims are preempted by the Parity Act.

III

Counterplaintiffs Heath, Coleman and Cushman also seek to appeal an order entered on February 2, 2001, denying them leave to file class counterclaims, again alleging violations of the Interest Act.  The lenders respond that this court lacks jurisdiction because the February 2, 2001 order is purely interlocutory.  

The orders dismissing the debtors' counterclaims and affirmative defenses were appealed pursuant to Illinois Supreme Court Rule 304(a), which provides:

"If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. Such a finding may be made at the time of the entry of the judgment or thereafter on the court's own motion or on motion of any party."  155 Ill. 2d R. 304(a).

The decision to enter a Rule 304(a) finding is within the trial court's discretion.  
Fremont Compensation Insurance Co. v. Ace-Chicago Great Dane Corp.
, 304 Ill. App. 3d 734, 740, 710 N.E.2d 132, 137 (1999).

An order denying class certification or decertifying a class or an order dismissing class action allegations is not final.  
Levy v. Metropolitan Sanitary District of Greater Chicago
, 92 Ill. 2d 80, 84
, 440 N.E.2d 881, 882 (1982)
.  Thus, the order here could not be appealed independently under Rule 304(a).  For suits filed before January 1, 2003, questions regarding class certification were subject to permissive appeals where the trial court had certified the question under Rule 308(a).  See 
Levy
, 92 Ill. 2d at 84
, 440 N.E.2d at 882
.  In suits filed after January 1, 2003, a party may petition this court for leave to appeal orders granting or denying class certification pursuant to Rule 306(a)(8).  
Official Reports Advance Sheet No. 5 (March 5, 2003),
 R. 306(a)(8),
 eff. January 1, 2003
.

Counterplaintiffs Heath, Coleman and Cushman do not claim that the order at issue is directly appealable by itself under Rule 304(a).  Nor do they contend that the question was certified under Rule 308(a), which would allow this court discretion to hear the matter.  Instead, these counterplaintiffs argue that the February 2, 2001 order may be reviewed by this court now because 
 it is a step in the procedural progression leading to the final judgment.  
Burtell v. First Charter Service Corp.
, 76 Ill. 2d 427, 434-35
, 394 N.E.2d 380, 383 (1979)
.

Initially, we note that the rule of 
Burtell
 addresses our ability to review judgments not specified in a Notice of Appeal, which is not the problem here.  However, even assuming 
arguendo
 that 
Burtell
 might apply in some cases involving class issues, it cannot be said to apply to a case involving, as here, a partial dismissal and a denial on the class issue that was not based on the substantive dismissal.  
For example, a motion to certify a class, if granted, presupposes that a cause of action has been stated, but a motion to dismiss is not dependent on a decision on the class-certification issue, since no class action can proceed unless a cause of action is stated. "In the first instance, the two questions are inextricable; in the second instance, they are separate questions which would be raised by different parties."  
Schlessinger v. Olsen
, 86 Ill. 2d 314, 318
, 427 N.E.2d 122, 124 (1981)
.  In this case, the denial of leave to amend was not based on the same reason as the dismissal of the Interest Act defenses and counterclaims.  Accordingly, it cannot be said that the order denying leave to amend to include class allegations was 
a step in the procedural progression leading to the
 dismissals of the debtors'  Interest Act defenses and counterclaims.  It is a conditional, interlocutory order subject to change prior to a decision on the merits.  See 735 ILCS 5/2--802 (West 2000).  Thus, this court lacks jurisdiction to consider the issue at this time.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is reversed as to the dismissal of the debtors' Interest Act defenses and counterclaims and the cases are remanded for further proceedings consistent with this opinion.  The appeals of the February 2, 2001, order are dismissed for lack of jurisdiction.

Reversed in part, dismissed in part and remanded.

O'BRIEN and REID, JJ., concur.

FOOTNOTES
1:  The creditors also submitted opinion letters by the federal Office of Thrift Supervision, but the trial court declined to consider them because they were expressly conditioned on facts not explicitly set forth in the letters.

2:  Defendant IMC Mortgage Company filed a motion for leave to cite 
Bulger v. Chicago Transit Authority
, 345 Ill. App. 3d 103, ___ N.E.2d ___ (2003), as supplemental authority.  The 
Bulger
 court ruled that it was not bound to follow the 
dicta
 of an equal or inferior court.  This case involves the issue of whether the trial court was bound to follow the decision of this court.  Accordingly, 
Bulger
 is distinguishable from this case.

3:  
The statute, as codified, provides as follows: 

"(a) The provisions of the constitution of any State expressly limiting the rate or amount of interest, discount points, or other charges which may be charged, taken, received, or reserved by lendors and the provisions of any State law expressly limiting the rate or amount of interest, discount points, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, or advance which is insured under subchapter I or II of [the National Housing Act].

(b) The provisions of subsection (a) of this section shall apply to loans, mortgages, or advances made or executed in any State until the effective date (after December 21, 1979) of a provision of law of that State limiting the rate or amount of interest, discount points, or other charges on any such loan, mortgage, or advance."  12 U.S.C. §§ 1735f-7(a),(b) (2000).

4:  The creditors' attempt to distinguish 
Doyle
 on the ground that it involved an FHA preemption is belied by their simultaneous reliance on 
Green v. Decatur Federal Savings & Loan Ass'n
, 143 Ga. App. 368,  238 S.E.2d 740 (1977), which not only involved the National Housing Act, but also predated the passage of DIDMCA and the legislation at issue in 
Doyle
.  This was not the creditors' only problem with dates.  For example, the creditors also cite 
Currie
 for the proposition that there was no legislation passed after March 31, 1980, exempting Illinois from the coverage of DIDMCA regarding points, ignoring the fact that 
Currie
 was decided in 1988–years before the amendment under discussion here.

5:  The creditors' brief calls the debtors' citation of 
Doyle
 "ironic," given the debtors' supposed rejection of other federal case law and heavy reliance on 
Hicks
.  The creditors' rejection of 
Doyle
 could be said to be at least as ironic, given their emphasis on the weight to be afforded federal case law in determining the preemptive scope of the DIDMCA.

The creditors also note that the legislative history of the amendment of section 4.1a does not refer to 
Currie
 or 
Hicks
.  Of course, as discussed in greater detail below, absent an ambiguity, statutory interpretation is limited to the plain language of the statute.  Moreover, legislative silence upon the judicial interpretation of a statute does not rebut the presumption that the legislature was aware of the case law when the statute was amended. See, 
e.g.
, 
Leischner v. Daniel's Restaurant, Inc.
, 54 Ill. App. 3d 568, 570
, 370 N.E.2d 157, 158 (1977)
.

6:  The creditors and entities filing briefs as 
amici curiae
 have all expressed their displeasure with the current Attorney General for agreeing with and intervening on behalf of the debtors in this case, given the office's prior opinion.  However, the issue is not whether the creditors were entitled to rely on the opinion of the Attorney General or of any entity which relied on the Attorney General's opinion.  Rather, the issue is whether the debtors' defenses and counterclaims are preempted by DIDMCA.